H. F. EWING ET AL. v. THE COMMISSIONERS COURT OF DALLAS COUNTY.

No. 3396.

83  663
88   19
a88 202

**Void Incorporation — Mandamus.** — The attempted incorporation of Oak Cliff was declared a nullity. Ewing v. The State, 81 Texas, 172. The officers of the city, after the decree annulling the charter or attempted incorporation, applied to the Commissioners Court that it take possession of certain property of the defunct city and apply same to payment of their salaries and arrears, and to levy a tax to pay the indebtedness. The commissioners refused. The officers then sought to compel action by mandamus from the District Court, where it was refused. On appeal, *held*, that the Act of April 13, 1891 (Laws 22d Leg., p. 95), did not apply in such case:

1. There never existed any indebtedness for which the inhabitants of the territory sought to be incorporated into a city were bound.

2. It seems that the Legislature would not have power to authorize the levy of a tax upon the inhabitants to meet liabilities incurred by the illegal attempt at municipal government.

3.   The property of the citizen can not be taken by taxation without his consent, which under the facts of the case can not be implied, as in case of a legal corporation.

4.   This act might have a prospective effect upon ineffective attempts at incorporation made after its enactment.

5.   The petition failing to show that there had been no reincorporation, upon which the power of the county commissioners arose, the application for mandamus was rightly refused, the right to the writ not being clearly shown.

APPEAL from Dallas.  Tried below before Hon. CHAS. FRED. TUCKER. The opinion states the case.

*Simpkins, Morrow & Roberts,* for appellants.—1.  The corporation was a de facto corporation.  Wait on Insolvent Corporations, sec. 485; 70 Texas, 597; 54 Texas, 80; 13 Texas, 598; 67 Texas, 67; 53 Texas, 331; 59 Texas, 344.

2.   Being a de facto corporation, it had the power to incur indebtedness in the administration of its affairs.  59 Texas, 344; 1 Texas, 653; 69 Texas, 59.

3.   Being a de facto corporation, it could assess and levy a tax.  67 Texas, 68.

4.   The Act of 1891, supplying the remedy sought by plaintiffs' petition, was a valid exercise of legislative power and applicable to the case at bar, as it sought only to effect the remedy in such cases.  See Acts 1891; 68 Texas, 43–48; 69 Texas, 17; 62 Texas, 102, 559.

5.   The Legislature has complete control and the power to provide how debts should be paid on dissolution.  Dill., sec. 105, note 2; 102 U. S., 472.

6.   The rights of creditors survive dissolution, and the right of taxation to pay debt is a part of the contract.  Dill., sec. 170, note; 62 Texas, 744.

7.   The remedy was mandamus, as the Legislature having provided the tribunal and authorized the tax, the duty of the Commissioners Court was only ministerial.  Dill., sec. 170–176; 70 Texas, 331; 68 Texas, 488; 69 Texas, 50; 76 Texas, 321; 63 Texas, 482; 62 Texas, 559.

No brief for appellee reached the Reporter.

STAYTON, CHIEF JUSTICE.—Under proceedings had before that time, on October 6, 1890, the county judge for Dallas County caused an order to be entered on the minutes of the Commissioners Court declaring the incorporation of the city of Oak Cliff, and ordering the election of municipal officers.

The election was held on November 1, 1890, at which all of plaintiffs but two were elected, and they entered upon the discharge of their duties; but on December 15 following, the State, on relation of property owners within the limits of the territory intended to be incorporated, instituted

a proceeding in quo warranto to test the validity of the incorporation; based on the fact that a large area of territory, in no sense a village, town or city, consisting of farms, pastures, and unoccupied lands, were improperly embraced within the limits of the corporation; and this resulted in a judgment declaring the invalidity of the incorporation. That judgment was rendered on February 25, 1891, and from it an appeal was prosecuted, on which this court, on May 22, 1891, affirmed the judgment.

Appellant Ewing claims that there is due him for services rendered as mayor from November, 1890, to May 22, 1891, a balance of $234. Appellant Smith claims for services as marshal during the same time $320, and appellant Obenchain claims $335 for services as city attorney during the same period.    Fakes & Co. claim $103.20 for furniture sold to the city in November, 1890; and the other appellant claims $67 for printing and stationery sold to the city in the same year.

The action was brought by appellants to compel the Commissioners Court to receive and dispose of property alleged to belong to the city, and amounting in value to $472.02, and the proceeds thereof to apply to the payment of their several claims; and further, to levy and cause to be collected a tax from the persons living within the territory intended to be incorporated such amount as would be necessary to pay their claims; but the court sustained a demurrer to their petition and dismissed the cause, and from that judgment they prosecute this appeal.

They base their right on a statute approved April 13, 1891 (Laws 22d Leg., 95), which provides, that "When any corporation is abolished as provided in the preceding article, or if any de facto corporation shall be declared void by any court of competent jurisdiction, or if the same shall cease to operate and exercise the functions of such de facto corporation, all the property belonging thereto shall be turned over to the county treasurer of the county; and the Commissioners Court of the county shall provide for the sale and disposition of the same and for the settlement of the debts due by the corporation; and for this purpose shall have power to levy and collect a tax from the inhabitants of said town or village, in the same manner as the said corporation would be entitled to under the provisions of this chapter."

The act also provides, that upon the incorporation of the "old or de facto corporation," all property owned by it shall belong to the new corporation, which shall be liable for and assume "all the legal indebtedness, contracts, and obligations of the old corporation;" and gives power to the Commissioners Court to appoint a tax collector, whose duty it is made "to collect the taxes within the territory comprised within the dissolved corporation," until the indebtedness is paid off, or until "reincorporation" has been accomplished.    The claims in question were new obligations, for which the inhabitants of the territory over which there was an attempt to extend incorporation were

liable; the attempted incorporation was held invalid, at the suit of in-
habitants promptly brought, on the ground of want of power to incor-
porate the territories sought to be brought within the limits of the city;
and while the Legislature has power to impose many burdens on
municipal corporations, and thus incidentally upon their inhabitants,
we do not see whence can come such a power to impose upon a single
citizen a debt which he never contracted, nor directly nor indirectly
authorized to be contracted.

The inhabitants of a municipal corporation are, in a restricted sense,
liable for the debts contracted legally by those who under the law have
control of municipal affairs, for they may be taxed to raise money to
discharge obligations so incurred; but in the case before us such obli-
gation never existed, unless the act referred to and relied upon imposes
it; and we are of opinion that the legislature has no more power to
cause a tax to be levied upon the property of the people living within
the boundaries which there was an unavailing effort to incorporate, for
the purpose of paying the claims of appellants, than would the Legisla-
ture have to say that a tax might be levied upon the property of any
hundred citizens of the State and collected for the same purpose.

The property of the citizen can not thus in effect be taken without
his consent, which under the facts alleged can not be implied. Such
legislation, if sustained, would deprive the citizen of his property
without due course of the law of the land; and would authorize the
taking of private property for public use without compensation or the
owner's consent. It would seem, under facts such as are stated in the
petition, that a municipal corporation brought into existence by the
voluntary action of persons living in that part of the territory, for-
merly sought to be incorporated, which might legally be incorporated
by reason of its being a city or town in fact, might be made liable for
the debts of what is termed the de facto corporation, if they incorpo-
rated after the passage of the act in question; for by the act of in-
corporating with knowledge of the terms on which the law permitted
them to do so, they might be held to voluntarily assume the pay-
ments of the debts of the de facto corporation. It would gen-
erally be found true, that those who do "incorporate" under the law
receive the benefits from which results the indebtedness.

There would seem to be less difficulty in holding that the duty of
receiving and disposing of property owned by a de facto corporation,
if there can be such property, and of applying its proceeds to the pay-
ment of its debts, might be imposed on a Commissioners Court, than
there would be in holding that it might levy and collect a tax from
persons not liable for the payment of such debts; but we will not under-
take now to decide this question, for the statute does not impose such
a duty on the Commissioners Court, nor permit it to exercise such a
power if there has been a municipal corporation created in so much of

the territory as might legally be incorporated. It rests upon a plaintiff seeking mandamus clearly to allege the facts which make it necessary to grant such a writ; and as there is no averment that there has not been what the statute calls a "reincorporation," it is not shown that the Commissioners Court had the power to do what the court was asked to compel it to do, nor that there was any necessity for the writ prayed for.

The judgment will be affirmed.

*Affirmed.*

Delivered March 11, 1892.