WILSON et al. v. CARTER.

(Court of Civil Appeals of Texas. Galveston. Nov. 1, 1913.)

1. MUNICIPAL CORPORATIONS (§ 14*)—ORGANIZATION — POPULATION — TERRITORY — STATUTES.

Sayles' Ann. Civ. St. 1897, art. 386a, provides that no city or town having less than 2,000 inhabitants shall be incorporated under the general charter act with a superficial area of more than two square miles. *Held*, that a city could not be legally incorporated under such section so as to include more than two square miles of territory in which there was less than 2,000 population, and an attempt having been made to do so, the defect was not cured by a resolution of the city council attempting to reduce the area by eliminating the excess over two square miles.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 34–39; Dec. Dig. § 14.*]

2. MUNICIPAL CORPORATIONS (§ 15*)—ORGANIZATION — TERRITORY — EXCESS — RELINQUISHMENT.

Sayles' Ann. Civ. St. 1897, art. 386b, enacted in 1895, providing for the relinquishment of territory in excess of two square miles illegally brought within the limits of a certain organized city, applies only to cities incorporated prior to 1895.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 40; Dec. Dig. § 15.*]

3. MUNICIPAL CORPORATIONS (§ 15*)—ORGANIZATION — PROCEEDINGS — VALIDATION — STATUTES.

Sayles' Ann. Civ. St. 1897, art. 386c, validating the incorporation of cities which had included within the territory sought to be incorporated more than two square miles, where their various city councils had restricted the limits to prescribed bounds, only applied to cities which had so acted prior to the adoption of the act in 1897, and had no effect on a city so incorporated in 1911.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 40; Dec. Dig. § 15.*]

4. MUNICIPAL CORPORATIONS (§ 15*)—ORGANIZATION—DEFECTS—STATUTES.

Rev. Civ. St. 1911, art. 776, validating the organization of cities which have included within their territory more than two square miles, etc., had no application to a city subject to such defect incorporated in April, 1911, but the corporation of which had been dissolved by an election prior to the taking effect of the act in September, 1911.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 40; Dec. Dig. § 15.*]

5. MUNICIPAL CORPORATIONS (§ 17*)—DEFECTIVE INCORPORATION — CORPORATION DE FACTO.

Where the proceedings for incorporation of a city of less than 2,000 inhabitants were in-

valid because more than two square miles of territory were included in violation of Sayles' Ann. Civ. St. 1897, art. 386a, but the city elected officers who assumed to act for it and in the regular discharge of their assumed duties incurred debts, the city became a corporation de facto, so that on the subsequent dissolution the court was authorized to appoint a receiver to collect its assets and pay debts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 34–39; Dec. Dig. § 17.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Suit by Mark M. Carter against Charles Wilson and others. From an order appointing a receiver for the City of Dayton in Liberty County, defendants appeal. Affirmed.

Marshall & Harrison, of Liberty, for appellants. Carter & Wilson, of Dayton, for appellee.

McMEANS, J. This is an appeal from an order of the district judge of the Ninth judicial district, made in vacation, appointing a receiver for the city of Dayton, in Liberty county. The appointment was made on the petition of Mark M. Carter, the appellee, who alleged in substance that the city of Dayton had been duly incorporated on the 17th day of April, 1911, under chapter 11, tit. 18, Revised Statutes of Texas, as containing more than 1,000 and less than 2,000 inhabitants, and that the corporation was thereafter abolished by an election duly held on the 29th of August, 1911, and that during the existence of the corporation it incurred debts, and that he was its creditor to the amount of $302.25. Charles Wilson and W. B. Jones, by permission of the court, intervened and resisted the appointment of a receiver, pleading that there never was a valid incorporation of the so-called city of Dayton for the reason that the city, as attempted to be incorporated, included a superficial area of more than two square miles, and further that under the facts the city of Dayton was never a de facto corporation and had no authority to incur indebtedness.

On the issues thus joined the following facts were proved: That on the 10th day of February, 1911, an election was held by qualified voters in the town of Dayton, to determine whether or not the town of Dayton should be incorporated under title 11, c. 18, of the Revised Statutes of the State of Texas, as a city having more than 1,000 and less than 2,000 inhabitants. All prerequisites and formalities were duly and legally complied with save and except that the proposed area or territory of the proposed city embraced and included 400 acres in excess of two square miles. That all qualified voters living in said territory participated in said election. That thereafter the city council ascertained that more than two square miles was included within its limits, and by an ordinance or resolution passed reduced the area or terri-

tory of the said city of Dayton to two square miles. And that thereafter the said city of Dayton, acting through its duly elected and qualified city officers, proceeded to exercise the functions of a city under title 18, c. 11, of the Revised Statutes of the State of Texas, until the 29th day of August, 1911, on which date an election was duly held, having been ordered by the county judge of Liberty county, Tex., for the purpose of abolishing said city of Dayton, and the qualified voters of the said city of Dayton, by a majority of votes abolished said city of Dayton as an incorporated city under title 18, c. 11, of the Revised Statutes of the State of Texas, and upon the result of said election having been duly declared by the county judge of Liberty county, Tex., the said city of Dayton ceased to exercise any functions of an incorporated city. The evidence further showed that the applicant, Mark M. Carter, is a creditor of the said city of Dayton, in the sum of $302.25, and that there is approximately $1,100 indebtedness due and owing by said city of Dayton, incorporated as aforesaid, which includes the $302.25 due the applicant, Mark M. Carter. The said indebtedness was contracted during the time said city of Dayton was operating and acting as a city. It is further proved that the interveners herein, Charles Wilson and W. B. Jones, are residents of the original incorporation and the reduced incorporation of the said city of Dayton, and owned real estate within the limits of the original incorporation and the reduced incorporation subject to taxation, and that they· are qualified voters under the Constitution and laws of the state of Texas.

We will not consider appellants' assignments of error in detail.

[1-5] The city sought to be incorporated had a population of less than 2,000 inhabitants and included a territory of more than two square miles; and the incorporation of this area was not authorized by article 386a, Sayles' Civil Statutes. After the attempted incorporation, the city council of Dayton caused a survey to be made, and, upon ascertaining that the area included 400 acres more than two square miles, attempted to reduce the area by eliminating therefrom the 400 acres improperly included. This was not authorized by law. Article 386b, Sayles' Civil Statutes, provides for the relinquishment of territory in excess of two square miles; but this article was adopted in 1895, and permits such action by only those cities that were theretofore incorporated. In 1897 the Legislature adopted an act (Acts 1897, c. 59; Rev. Civ. St. 1911, art. 776) validating the incorporation of cities which had, at the time of incorporation, included within the territory sought to be incorporated more than two square miles, but where city councils had theretofore restricted the limits to the prescribed bounds. Sayles' Civil Statutes, art. 386c. Manifestly this act did not authorize such action on the part of the city council of Dayton after its attempted incorporation in April, 1911. The same may be said of the validating act of 1897, brought forward in Sayles' Statutes as article 386e. All of these validating acts were re-enacted by the Thirty-Second Legislature in the act adopting the Revised Civil Statutes of 1911; but this act did not go into effect until September 1, 1911 (Rev. Civ. St. 1911, p. 1721, § 19), which was after the election by which the corporation of Dayton was declared abolished. The facts thus standing, the incorporation of the city of Dayton with a territory exceeding two square miles was without the authority of law, and the attempted reduction of the territory was not authorized by the statutes and did not cure the invalidity of the original incorporation. But notwithstanding the irregularity or invalidity of the corporation, a mayor, city council, and other officers were elected, and these officers assumed to act for the city, and in the regular discharge of their assumed duties incurred debts, among others being the one due the appellee. As said by this court· in City of Carthage v. Burton, 51 Tex. Civ. App. 195, 111 S. W. 441, an exactly similar case: "The election to determine whether the city should be incorporated, the result of that election, the organization and election of officers of the corporation, and the assumption of such officers to act for it, created a corporation de facto"—citing White v. Quanah, 27 S. W. 840; Ewing v. Commissioners' Court, 83 Tex. 663, 19 S. W. 280. We quote further from the opinion: "Even if a municipality has been illegally constituted, the state alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter. When the question arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law and recognized by the state as such. Graham v. City of Greenville, 67 Tex. 67, 2 S. W. 742; City of El Paso v. Ruckman, 92 Tex. 89, 46 S. W. 25. During the existence of the corporation it incurred debts, which are not questioned as being such as that the corporation could have made had it had a legal existence. By an act approved April 13, 1891 (Laws 22d Leg. p. 95, c. 77), it is provided that: 'When any corporation is abolished as provided in the preceding article, or if any de facto corporation shall be declared void by any court of competent jurisdiction, or if the same shall cease to operate and exercise the functions of such de facto corporation, all the property belonging thereto shall be turned over to the county treasurer of the county, and the commissioners' court of the county shall provide for the sale and disposition of the same and for the settlement of the debts due by the corporation, and for this purpose shall have power to levy and collect a tax from the inhabitants of said town or village, in the same manner as said corporation would be entitled to under the provisions of this chapter.' It

seems that before the adoption of this act the property of the citizen could not be subjected to the payment of the debts incurred by a de facto corporation. But since its passage a municipal corporation which is brought into existence by the voluntary action of persons living in the territory sought to be incorporated, by reason of its being a town or city in fact, might be made liable for the debts of what is termed the de facto corporation. Ewing v. Commissioners' Court, 83 Tex. 666, 19 S. W. 280. The reason given for the rule in the case cited is that, by the act of incorporating with knowledge of the terms of which the law permitted them to do so, the citizens might be held to voluntarily assume the payment of the debts of the de facto corporation. The city of Carthage was sought to be incorporated subsequent to the adoption of the act in question, and it was then a city in fact which might have been legally incorporated, and it was therefore at least a de facto corporation, and the property of its citizens was liable for the debts incurred by it. This being true, the act of 1905 (Acts 1905, p. 325, c. 134) authorized the district court of Panola county to appoint a receiver of the abolished corporation on the petition of any creditor, and upon a showing, which was made in this case, that the property owned by the city was not of sufficient value to pay all claims legally established against it, to yearly levy a tax upon all real and personal property situated within the limits as previously incorporated, sufficient to discharge the same, not to exceed the rate allowed by existing law for such purposes in said city."

We do not think it would be profitable to add anything to what is said in the opinion from which we have quoted at such length. We think there was no error in the appointment of the receiver under the facts stated, and that the judgment should be affirmed and has been so ordered.

Affirmed.