AMERICAN BOOK COMPANY V. S. M. N. MARRS, STATE SUPERINTENDENT OF PUBLIC INSTRUCTION.

No. 4001.   Decided June 30, 1923.

(253 S. W., 817.)

1.—Mandamus—Pleading.

Mandamus will only be granted upon a petition showing every fact necessary to entitle the relator to the relief sought, that he has a clear right to the writ, and a plain duty of the officer against whom it is sought to perform the things demanded. (P. 297).

2.—Same—Public Schools—Text Books—Superintendent of Instruction—Board of Education.

The distribution of school funds, including those for the purchase of free text books, to the several counties, is placed by the Constitution (Art. 8. Secs. 3, 8) in the power of the State Board of Education. It is their duty to determine the number and kind of books required, the existing contracts therefor and the cost for furnishing them. The Superintendent of Public Instruction is authorized to act in distribution of the books, only on determination of these matters by the Board and on their approval (Rev. Stats. Arts. 2904½, 2904¼d, 2904¼l). In absence of allegation of such determination of these matters by the Board, the State Superintendent cannot be required by mandamus to make requisition on behalf of the counties for the purchase of such text books from one alleged to have a contract with the State for furnishing them, and to cancel his requisition for other books. (Pp. 297-299).

Original Application to the Supreme Court by the American Book Co., for writ of mandamus against S. M. N. Marrs, as State Superintendent of Public Instruction.

*H. M. Garwood, C. R. Wharton,* and *E. F. Smith, (Baker, Botts, Parker & Garwood,* of counsel) for relator.

In support of our proposition that there is a legal duty imposed by law upon the respondent to do that which relator in its petition prays the court to command him to do, we direct the attention of the court to the following statutory provisions: Section 5, Chapter 44, Acts of the 35th Legislature, First Called Session (Article 2909-bb, Texas Complete Statutes 1920); Section 20, Chapter 44, Acts of the 35th Legislature, first called session, (Article 2909-ii Texas, Complete Statutes 1920); Section 23, Chapter 44, Acts of the 35th Legislature, first called session, (Article 2909-k Texas Complete Statutes 1920); Section 28, Chapter 44, Acts of the 35th Legislature, first called session, (Article 2909-n Texas Complete Statutes 1920); Section 10, Chapter 29, Acts of the 36th Legislature, Regular session, (Article 2904 1-4-i, Texas Complete Statutes 1920); Section 19, Chapter 29, Acts of the 36th Legislature, regular session, (Article 2904 1-4-r, Texas Complete Statutes 1920); Maud v. Terrell, 109 Texas, 99; Brady v. Brooks, 99 Texas, 366; Harris County v. Stewart, 91 Texas, 133; State v. I. & G. N. Ry., 89 Texas, 562.

Relator's contract being "apparently" valid, respondent as a subordinate executive officer whose duties in the premises are clearly defined by law and ministerial in their nature cannot attack the validity of said contract. State Ex rel Sellers v. Fifth Jefferson Drainage District, 92 So., 592; State Ex rel Holmes v. Kernes, 167 S. W., 1080; State v. Chapman, 65 N. E., 154; Territory v. Caffrey, 67 Pac., 204; State Ex rel Bean v. Lyons, 96 Pac., 922; McGee v. School District, 198 Pac., 61; Goree v. Greenwood County Supervisor, 76 S. E., 705; Hurtel v. Boismenue, 82 N. E., 298; Fitzgerald v. Robison, 220 S. W., 768; Rasure v. Sparks, 183 Pac., 495.

It is held by the great weight of authority, and especially in the later cases, and upon solid reason, that an officer called upon to perform a ministerial duty, imposed by statute, cannot defend upon the ground that the statute which imposes the duty is unconstitutional. Wiles v. Williams, 133 S. W., 1, 34 L. R. A., (N. S.) 1060; Braxton County v. West Va., 208 U. S., 192; People v. Leddy, 123 Pac., 824; In re Terrett, 86 Pac., 266; People v. Rafferty, 136 N. Y. S., 4; State v. Vail, 95 N. E., 911; State v. Cain, 58 S. E., 937; Richardson v. Young, 125 S. W., 664; State v. Sparling, 107 N. W., 1040; State v. Schnitger, 95 Pac., 698; State v. Heard, 18 So., 746, 47 L. R. A., 512; State v. Baggett, 80 So., 743; State Ex rel. Dillon v.

County Court, 60 West Va., 339; Capito v. Topping, 64 S. E., 845, 22 L. R. A., (N. S.) 1089; Extended note Vol. 25, Annotated Cases, 1912D, page 151.

Relator's contracts are not subject to attack except by direct suit brought for that purpose by the Attorney General. The contracts between relator and the State of Texas having been duly executed by the State and accepted by the State, it is conclusively presumed that said contracts are beneficial to the State. The State has the right to waive any defects in said contracts if it desires to do so. Brady v. Brooks, 99 Texas, 366; Maud v. Terrell, 200 S. W., 375; State v. I. & G. N. Ry. Co., 89 Texas, 562; Moore v. Attorney General, 95 Texas, 151; Oriental Oil Company v. State, 135 S. W., 722.

Respondent's attempted attack on the validity of relator's contracts with the State is a collaterial attack on the action of the State Text Book Commission, which is a legally constituted board and agency of the State of Texas and its action in awarding the contracts to relator is not subject to collateral attack. This Honorable Court has held in fourteen cases that the action of a legally constituted Board of Land Commissioners, deciding who were the heirs of deceased persons and issuing to them a headright certificate, cannot be collaterally attacked, whether the decision of the board was right or not. Styles v. Gray, 10 Texas, 506; Hatch v. Dunn, 11 Texas, 714; Ruis v. Chambers, 15 Texas, 590; Johnson v. Smith, 21 Texas, 728; Babb v. Carroll, 21 Texas, 767; Bowmer v. Hicks, 22 Texas, 161; Todd v. Fisher, 26 Texas, 242; Howard v. Colquhoun, 28 Texas, 146; Walters v. Jewett, 28 Texas, 192; McPhail v. Burris, 42 Texas, 145; McGowan v. Zimpleman, 53 Texas, 479; Hanrick v. Jackson, 55 Texas, 32; Palmer v. Curtner, 55 Texas, 67; Burkitt v. Scarborough, 59 Texas, 497.

In this case the court will presume, in view of the uncontroverted facts appearing in the record, that the State Text Book Commission did approve relator's contracts. Rand, McNally & Co. v. Royal, 78 Pac., 1103; Bank of United States v. Dandridge, 12 Wheat. 64; Clements v. Robison, 239 S. W., 903; Johnson v. Robinson, 240 S. W., 300; Gulf Production Co. v. State, 231 S. W., 124; D. & R. G. Ry. v. Ariz. & Col. R. R., 233 U. S., 603; Railway Cos. v. Keokuk & Hamilton Bridge Co., 131 U. S., 371.

The prohibition contained in Article 2909a, Texas Complete Statutes 1920, being section one of the State Text Book Commission Act, does not go to the extent of making the contract void if a legal representative or temporary employe or other special agent of a text book company presents the merits of a book to the members of the Commission individually and at a time when the Commission is not in session. That which is merely voidable is frequently called void, and the provision of the statute giving the state power to elect whether or not

it will cancel the contract clearly shows that by void is meant voidable. Allis v. Billings, 6 Metc., 415; Beechen v. Marquette etc., Co., 45 Mich., 103, 108; Terrill v. Auchauer, 14 Ohio St. 80, 85; Election Cases, 65 Pa. 20, 34; Melms v. Brewing Co., 93 Wis., 153; Larkin v. Saffarans, 15 Fed., 147; 40 Cyc. 215; Southern, etc., Ins. Co. v. Barr, 148 S. W., 845.

*W. A. Keeling,* Attorney-General, and *Jno. C. Wall, Frank M. Kemp and Bruce Bryant,* Assistants, *Ethridge, McCormick & Bromberg, A. M. Frazier, T. N. Jones,* and *Chas. L. Black,* for respondent.

Nowhere does the petition show by actual allegations of matter of fact that the contracts are valid contracts. The actual steps and proceedings required by law to constitute valid contracts between relator and the State of Texas with respect to the text-books are not alleged. Instead of these essential allegations, we have only a conclusion of law presented by the pleader. This form of pleading is insufficient as against a general demurrer. Webb County v. Board of School Trustees, 95 Texas, 131-136; Gray v. Osborne, 24 Texas, 157; Sneed v. Moody, 24 Texas, 159; Millican v. McNeil, 92 Texas, 400; Anderson v. Boyd, 64 Texas, 108.

The State of Texas can make text-book contracts only through certain officers and by virtue of certain proceedings outlined in detail in the applicable statutes. Therefore a pleading alleging that the contracts were lawfully made or made ''in accordance with law,'' without setting out the actual steps and proceedings required by law to constitute a contract, is insufficient. Webb County v. Board of School Trustees, 95 Texas, 131-136; Millican v. McNeil, 92 Texas, 400-405.

Unless the contracts and bonds were approved by the Commission, relator is without legal right, because its contracts are void. Wykoff v. W. H. Wheeler & Co., 135 Pac., 399; Wykoff v. W. H. Wheeler & Co., 139 Pac. 319; State ex rel. Publishing Company v. Hogan, 22 Montana, 384, 56 Pac., 818; State ex rel. Publishing Company v. Smith, 57 Pac., 449; Pavement Company v. Ricord, 35 N. J. Law., 396; Board v. Supervisors, 94 Mich., 386, 54 N. W., 169; Brown v. Newburyport, 95 N. E., 504; Blair v. City of Waco, 75 Fed., 800; Bryan v. Page, 51 Texas, 532; Abbott on Public Corporations, Sec. 260, Vol. I; Page on Contracts, Second Edition, Sections 1866 and 1935.

That the respondent, charged by law with the performance of this contract, if valid, may urge, in defense to the writ of mandamus, that the contract is invalid, the following authorities are cited: Reg. v. Littledale, L. R., 10 Ir., 78; Board v. Supervisors, 94 Mich., 386; State v. O'Hara, 56 N. J. L., 279; Pavement Co. v. Ricord, 35 N. J. L., 396; State v. Hill, 32 Minn., 275; People v. Green, 66 Barb., 630; State v. Walker, 49 Fla., 259, 38 So. 600; Daniels v. Long, 111 Mich., 562, 69 N. W., 1112; State v. County Court, 35 S. E., 959; Thiele v.

Slocum, 51 N. W., 969; Loomis v. Township, 53 Mich., 135; Commonwealth v. Babler, 212 Pa. St., 230; Keller v. Hyde, 20 Calif., 594; Connor v. Morris, 23 Calif., 447.

The right to cancel a contract for fraud or collusion is not created by this act (Rev. Stats., Art. 2909n); it existed prior to the Act. It was as fully applicable to the contracts of the State as to contracts of individuals. Under general principles of law, the State may be relieved of contracts induced by fraud or collusion of public agents. So, for ''material breach of contract,'' the State has its remedy prior to the statute. This being true, it will not be presumed that the statute affords an exclusive remedy. Juneman v. Franklin, 67 Texas, 414; State v. Snyder, 66 Texas, 687; Thouvenin v. Rodrigues, 24 Texas, 468, Grassmeyer v Beeson, 18 Texas, 753, Luder v. State, 152 S. W., 220; Fletcher v. State Capital Bank, 37 N. H. 369; Dean v. Sullivan Railway Co., 22 N. H. 316; Healey v. New Haven, 49 Conn., 394; Jamison v. Springfield, 53 Mo., 224.

The attempted delegation of power to the Governor to approve these contracts was a nullity. There are no applicable authorities sustaining such action. 2 Lewis' Sutherland on Statutory Construction, sec. 492; Pohle v. Robertson, 102 Texas, 274; People v. Dulaney, 96 Ill., 503; State ex rel. Pub. Co. v. Hogan, 22 Mont., 384; State ex rel. Pub. Co. v. Smith, 57 Pac., 449; Maynard v. Olsen, 48 Kans., 565; Brown v. Newburyport, 95 N. E., 504; Cooley, Munic. Corp., 238; Bryan v. Page, 51 Texas, 532; Abbott, Pub. Corp., sec. 260; Page on Contracts, sec. 1866; Press Pub. Co. v. Pittsburg, 207 Pa. St., 623; Day v. Ryan, 91 Atl., 633; Hepburn v. Philadelphia, 149 Pa. St., 335, 24 Atl., 279; Smart v. Philadelphia, 205 Pa. St., 329, 54 Atl., 1025; Railway Co. v. Randolph, 24 Texas, 317, 332; Haverbekken v. Hale, 109 Texas, 106.

A writ of mandamus to compel officers to perform public contracts will be refused where it appears from extraneous facts that the contracts are void or even voidable or of doubtful validity. The authorities on this subject have been hereinbefore discussed. See particularly: First National Bank v. Turnpike Co., 104 N. W., 771; People v. Green, 66 Barb., 630; Board v. Supervisors, 94 Mich., 386; State v. Hill, 32 Minn., 275.

In Section V of the Answer facts are alleged showing the pendency of a dispute between Relator and the State as to the validity of these contracts. It is submitted that, since that is true, a writ of mandamus will not be awarded against a ministerial officer to compel performances of acts sought only because of the contracts, to which the relator is entitled only by virtue of the contracts, and which if done will constitute a performance of the contracts. It is well settled that the writ of mandamus will not be issued in doubtful cases and will not be used to enforce disputed or doubtful rights resting in contract. Spelling on Extraordinary Remedies, Second Edition, Sections 1441,

1457, 1485, 1499, and 1500; People v. Green, 66 Barb., 630; Thiele v. Slocum, 51 N. W., 969.

MR. JUSTICE PIERSON delivered the opinion of the court.

Relator, American Book Company, filed its petition in this Court for writ of mandamus against respondent, S. M. N. Marrs, State Superintendent of Public Instruction, in which it alleges that it has two certain valid contracts with the State of Texas, entered into between it and the Texas State Text Book Commission, by the terms of which it had contracted and obligated itself to furnish and sell to the State of Texas, for a stated period of time, certain text books, and that the State of Texas had obligated itself to use said text books in its public schools. It further alleged that it is the duty of respondent, as State Superintendent of Public Instruction, to furnish to all Boards of School Trustees of the State of Texas blank forms for reports for requisition of such text books, and that after such requisitions have been made, to order the appropriate number of books from the relator's State depository, such order to be made not later than June 1st of each year. Relator further alleged that respondent had failed and refused to perform his ministerial duties in relation to its said two contracts, but had sent out blank forms for requisition of text books to the School Superintendents of the State which contained the names of geographies other than the ones which relator had contracted to furnish, and which it had the exclusive right under its contracts to furnish, and had thus deprived relator of all opportunity to furnish and sell to the State the text books it had contracted to furnish, and prevents relator from carrying out the terms of its said contracts. It prayed for a mandamus, commanding respondent: (a) To cancel and hold for naught any and all requisitions made by the School Superintendents of the State on the blank forms theretofore sent out by respondent, which did not contain the names of the books which relator had contracted to furnish to the State; (b) to immediately send out, or cause to be sent out, blank forms for reports for requisition of text books which will contain the names of the books which relator has contracted to furnish to the State of Texas for use in its public schools; (c) that as soon as requisitions are received by respondent on the blank forms to be sent out, that respondent be required to furnish to relator's State depository an order for all of the text books so requisitioned on said forms; and (d), to do anything and everything that is necessary and proper to carry out the contracts made by relator with the State of Texas.

After demurring generally and specially to relator's petition, in which he alleges that relator's petition on its face is insufficient to entitle it to the relief sought, respondent answers and alleges that relator has no contracts with the State of Texas as alleged by it, and

that the contracts alleged by relator are void and were never in fact legally made, for the reasons and on account of the facts thereinafter alleged. He then alleges that in various and sundry ways, not necessary here to set out, the contracts alleged by relator had not been executed in the manner and in the particulars required by the statutes relating to the awarding, making, and executing of contracts, bonds, etc. by and between the Texas State Text Book Commission and publishers of books. For and on behalf of the State, he alleges facts that he contends avoid the contracts.

In view of the disposition we are making of the case, it is not necessary to detail the allegations of fact set up in respondent's answer.

A writ of mandamus will not be granted unless the petition shows every fact necessary to entitle the relator to the relief sought. Munson v. Terrell, 101 Texas, 220, 105 S. W., 1114; Ewing v. Commissioners' Court, 83 Texas, 667, 19 S. W., 280; Arberry v. Beavers, 6 Texas, 457, 55 Am. Dec. 791; Burrell v. Blanchard, 51 S. W., 46.

Also, the petition must show that the relator has a clear right to the writ, and that it is plainly the duty of the officer against whom the writ is sought to perform the things demanded. Houston T. & B. Ry. Co. v. Randolph, 24 Texas, 317; Bank of Nocona v. March, 51 S. W., 266; Texas Mex. R. Co. v. Locke, 60 Texas, 623.

Article VII, Section 8, of the State Constitution reads as follows:

"The governor, comptroller and secretary of state shall constitute a board of education, who shall distribute said funds to the several counties and perform such other duties concerning public schools as may be prescribed by law."

"*Said funds*" as used in this Section of the Constitution refers to the various State school funds, including the annual available funds, in which is embraced that appropriated by the Legislature under Section 3, of Article VII, as well as from other sources. Webb Co. v. School Trustees, 95 Texas, 137, 65 S. W., 878. The Constitution having placed the distribution of this fund in the hands of the State Board of Education, the grant is exclusive and the power must be exercised by them alone or under their direction. State v. Moore, 57 Texas, 307; Gillam v. Null, 58 Texas, 298; Parks v. West, 102 Texas, 11, 111 S. W., 726.

Section 3 of Article VII makes it the duty of the Board of Education to set aside from the available school funds the necessary funds with which to provide free text books for the use of children attending the public schools. This grant of power is likewise exclusive, and leaves directly with the Board the sole power and duty of determining how much money may be necessary. In order to ascertain this, the School Board must know, first, the number and kinds of books required in the various schools of the State, and second, what they will cost under the contracts. In order to ascertain the latter, they

must know whether or not any contracts have been made, and with whom, and the kind, character, and price of the books therein specified. It is thus seen that the power of ascertaining the number of books needed, price, etc., the existence of contracts and the identity of contractors, is by the Constitution confided alone to the State Board of Education. The various statutes authorizing acts upon the part of the State Superintendent with reference to the requisitions complained of, necessary in order to determine the number and kinds of books required by the schools, must be construed with reference to the exclusive grant of power to the State Board of Education. Since under the Constitution the distribution of the available school fund is placed exclusively in the hands of the State Board of Education, and since the free text book fund is simply a portion of the available school fund, invested in the books, it follows that the books themselves can be distributed only by the State Board of Education, or under its direction.

Article 2904-1/4, Revised Statutes, provides:

"The State Board of Education is hereby authorized and empowered and it is made its duty to purchase books from the contractors of text books used in public free schools of this State and to distribute the same without other cost to the pupils attending such schools within this State in the manner and upon the conditions hereinafter set out."

Article 2904-1/4d, Revised Statutes, provides:

"The purchase and distribution of free text books for the State shall be under the management of the State Superintendent of Public Instruction, subject to the approval of the State Board of Education. All details of plans for purchase and distribution of books not definitely covered by the provisions of this law shall be subject to the laws of the State and approval of the State Board of Education."

Further, Article 2904-1/4l provides:

"Specific rules as to the requisition, distribution, care, use, and disposal of books may be made by the State Superintendent of Public Instruction subject to the approval of the State Board of Education."

The Primary duty to purchase and distribute these books is, by Article 2904-1/4, placed upon the State Board of Education.

The management thereof, its ministerial features, is by Article 2904-1/4d placed upon the State Superintendent of Public Instruction,—subject, however, to the approval of the State Board of Education.

Thus, the Constitution and the Statutes place the responsibility and ultimate authority in the matters of purchasing text books from the contractors of text books selected by the Textbook Commission, and their distribution, with the State Board of Education.

It will be noted that by the terms of Article 2904-1/4 the State Board of Education is authorized and empowered, and it is made its duty, "to purchase books from the *contractors* of text books," and "to distribute the same," etc. This language places the responsibility upon the State Board of Education to ascertain or determine who are *contractors* of text books from whom they are to purchase books. This is the agency the Constitution and the law have created and charged with the administration of these functions of government, and clothed with the powers necessary to their performance.

From the foregoing it is clear, we think, that unless the acts of the Superintendent in specifying the contracting companies and the books to be used have the approval of the State Board of Education, all he may do is a nullity. It amounts to nothing. Only the State Board of Education has authority to determine what books have been contracted for, with whom the contracts have been made, and what matter should be placed in the requisitions sufficient to enable it to ascertain the books to be used, the price thereof, and the money necessary to pay for them, and the counties to which the requisite books should be distributed. Any other construction of the powers and duties of the Superintendent would be inconsistent with the Constitution and correlated Statutes.

Relator does not allege that the State Board of Education has in any way acted upon its said contracts. Nowhere in relator's petition does it allege that the said State Board has exercised its powers and authority in any manner as affecting its contracts, or that respondent, in his ministerial capacity, has refused, or is refusing, to do and perform the decisions, ruling, or mandates of the Board, or that he, in the matters complained of, was acting contrary to or without the approval of the Board.

From the foregoing it follows that relator, in order to show itself entitled to a mandamus against respondent, must allege that the State Board of Education has determined that a contract exists with it, and has instructed the respondent to place its books on the requisition lists. Otherwise, the respondent has no duty in the premises. Whatever he may do amounts to nothing, so far as abrogating the contract of relator is concerned, or determining its nonexistence, unless what the respondent may do is authorized by or approved by the State Board of Education.

The decisions upon the matters involved in relator's petition lying with the State Board of Education, and not with respondent, it is clear that respondent could not by mandamus be required to do the things prayed for here, unless and until the State Board of Education had ordered and directed him to do them and he had failed or refused to do them. Therefore, relator has not shown itself entitled to the relief sought.

It becomes unnecessary to notice or discuss the interesting questions raised by relator and respondent.

The application for the writ of mandamus is denied.