Thomas H. CROFTS, District Judge of the 86th Judicial District of Texas et al., Relators,

v.

The COURT OF CIVIL APPEALS FOR the EIGHTH SUPREME JUDICIAL DISTRICT of Texas et al., Respondents.

No. A–9182.

Supreme Court of Texas.

Nov. 14, 1962.

Wynne & Wynne, Wills Point, L. F. Sanders, Canton, for relators.

W. Ernest West, Canton, W. J. Barnes, Richard W. Barnes, Rockville, Md., for respondents.

HAMILTON, Justice.

This is an original suit for writ of mandamus brought by relators Thomas H.

Crofts, District Judge of Van Zandt County, Texas, 86th Judicial District, and Ancel M. Autry, W. N. Autry and wife, Mary Lou Autry, praying that this court issue its writ of mandamus directing the Court of Civil Appeals for the Eighth Supreme Judicial District at El Paso, Texas, to rescind its order granting writ of mandamus against Judge Crofts.

The facts, as stated in the two Court of Civil Appeals opinions and the briefs of the parties are as follows: The controversy grew out of a suit for divorce and for custody of the children of Ancel and Anita Autry, husband and wife. Six children were born to this marriage. Ancel and Anita made their home in Montgomery County, Maryland. On August 13, 1958, Ancel took the five oldest children and came to Texas, leaving Anita and their youngest child in Maryland. On November 3, 1958, Anita filed suit in Maryland for divorce *a mensa et thoro* and for custody of the one child left with her. The Maryland court, on March 2, 1959, decreed the divorce *a mensa et thoro* and gave custody of the youngest child to Anita.

In December, 1958, Ancel filed suit in Van Zandt County, Texas, district court for divorce and for custody of the five children with him, but before Ancel's suit was tried Anita came to Texas, took the five children back to Maryland with her, and filed proceedings there for custody of those children.

In June of 1959, before legal custody of the five children had been determined by any court, Ancel went to Maryland, got possession of the children, and brought them back to Van Zandt County, Texas. Anita came to Texas, filed an answer to Ancel's divorce petition then pending in the Van Zandt County district court, and filed a cross-action and pleas in abatement and to the jurisdiction alleging the pendency of her suit in Maryland. The plea in abatement and to the jurisdiction were sustained by the Van Zandt County district court, and Ancel's divorce suit was dismissed.

Ancel appealed from the order of dismissal to the Fifth Court of Civil Appeals. On equalization of the docket the Supreme Court transferred the case to the Eighth Court of Civil Appeals at El Paso. That court affirmed the order of dismissal on the grounds of comity. 350 S.W.2d 233. Ancel filed application for writ of error in the Supreme Court, but this was dismissed for want of jurisdiction.

On January 10, 1961, Anita filed a petition for writ of habeas corpus in the Van Zandt County district court, alleging that the Maryland court had entered a decree giving her legal custody and asking that the children be remanded to her possession. Ancel filed an answer and a cross-action by means of which he sought to get a change of legal custody on the ground that there had been a change of conditions since the Maryland decree was entered. When the case was called for trial both Ancel and Anita appeared. Anita's counsel filed a plea of res judicata based on the previous order of dismissal; this plea was overruled, and the case was continued. Anita then filed a petition for writ of mandamus in the Eighth Court of Civil Appeals at El Paso asking the Court of Civil Appeals to direct the Van Zandt County district judge to issue a writ of habeas corpus remanding the children to her possession. This writ of mandamus was granted by the Court of Civil Appeals. 359 S.W.2d 272.

The relators, Judge Crofts and Ancel Autry, attack the jurisdiction of the Court of Civil Appeals to issue the writ of mandamus and pray that this court issue a writ of mandamus directing the Court of Civil Appeals to rescind its writ of mandamus.

 We think that the Court of Civil Appeals did *not* have jurisdiction to issue the writ of mandamus ordering the trial court to grant the writ of habeas corpus to Mrs. Autry. The Court of Civil Appeals justifies its assertion of jurisdiction on the ground that the Van Zandt County district court order of dismissal of Ancel's suit in and of itself required a transfer of posses-

sion of the children to their mother, that such transfer of possession was a mere ministerial act of the district court growing out of the order of dismissal. The Court of Civil Appeals then reasons that it has the power to mandamus the district court to perform the ministerial acts ancillary to its order of dismissal.

■ We think that the Court of Civil Appeals was mistaken in assuming that an order giving Mrs. Autry possession could be considered ancillary to and a ministerial act flowing from the order of dismissal. It is elementary that a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought. White v. White, 70 R.I. 48, 36 A.2d 661, 151 A.L.R. 1374; Bryan v. Smith, 7 Cir., 174 F.2d 212, 11 A.L.R.2d 1402; see 17 Am.Jur. 158, Dismissal, Discontinuance, and Nonsuit, § 86.

The Court of Civil Appeals says that since the trial court had jurisdiction to try Ancel's divorce suit, the order of dismissal resembles a judgment of the district court from which relief may flow. We do not agree that because the Van Zandt County district court could have asserted its jurisdiction its order of dismissal took on any greater significance than any other order of dismissal. In short, delivery of possession of the children to their mother was not a ministerial act to be done after dismissal was ordered, and her application for writ of mandamus to the Court of Civil Appeals cannot be said to be ancillary thereto.

■ One basis on which the Court of Civil Appeals justified its granting of the writ of mandamus was that the removal of the children by Ancel Autry from the State of Maryland, while the custody proceeding filed there was pending, was wrongful. We do not agree. In the absence of an order of the Maryland court enjoining or prohibiting Ancel from removing the children during the pendency of the custody proceeding he had as much right to the possession

of the children as did the mother. His removal of the children to Texas was not wrongful or unlawful. Neither was the mother's removal of the children from Texas to Maryland during the pendency of the divorce and custody proceeding in the Texas court wrongful in the absence of a court order prohibiting such removal. Either court could have entered an order against such removals, but neither did so.

■■ The Court of Civil Appeals has no power to mandamus the district court except as provided for by Articles 1823 and 1824, Vernon's Ann.Texas St.; Art. V, § 6, Texas Constitution, Vernon's Ann.St. Under these statutes the Court of Civil Appeals may mandamus only in protection of its appellate jurisdiction and to order a trial judge to proceed to trial and judgment. The Court of Civil Appeals' writ ordering Judge Crofts to turn over the children to Anita cannot be justified on either ground of mandamus jurisdiction. Judge Crofts has not refused to proceed to trial. On the contrary, the relators contend that when the case was called for trial and all the parties were before the court, it was Mrs. Autry's counsel who refused to proceed, filed plea of res judicata based on the dismissal order, and threatened to mandamus Judge Crofts if he went ahead and tried Ancel's custody question. It was at this point that Judge Crofts continued the cause.

Nor can this mandamus be justified on the ground that the Court of Civil Appeals was protecting its appellate jurisdiction. As we have shown, the application for writ of habeas corpus was an entirely original matter based upon the alleged Maryland decree; it in no way grew out of or was ancillary to the order of dismissal which had been affirmed by the Court of Civil Appeals on appeal.

■ The Maryland custody decree on which Mrs. Autry relies for her writ of habeas corpus apparently has not been proved, as it does not appear from the record that it was ever before either the district court or the Court of Civil Appeals, but as-

suming that there is a valid Maryland decree vesting custody in her, and assuming that Ancel has refused to obey that decree by keeping the children in his possession, these may be shown in the habeas corpus proceeding in the Van Zandt County district court. It is true that under the decisions of this court the questions of legal custody may be reopened upon allegations by Ancel that conditions have materially changed. Short v. Short, Tex., 354 S.W.2d 933; and Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79. But that is beside the point. The question now before us is which court has the jurisdiction to determine the right to possession of the children on habeas corpus, the district court or the Court of Civil Appeals.

The Court of Civil Appeals has no jurisdiction to issue writs of habeas corpus as an original matter. Art. V, § 6, Texas Constitution; In Re Hoover, 245 S.W.2d 557 (Civ.App., 1952), no writ hist. On the other hand, the district court does have jurisdiction to try originally and to issue writs of habeas corpus in matters of child custody. Art. V, § 8, Texas Constitution; Legate v. Legate, 87 Tex. 248, 28 S.W. 281. The Court of Civil Appeals' writ of mandamus told Judge Crofts that he must grant the writ of habeas corpus without a hearing and without the exercise of his discretion. While the Court of Civil Appeals may mandamus the district court to proceed to trial and judgment in habeas corpus proceedings, it may not tell the district court what judgment to enter.

In view of this opinion we assume that the Eighth Court of Civil Appeals will rescind its writ of mandamus; otherwise, the writ prayed for herein will issue.

CULVER, Justice (dissenting).

I respectfully dissent. In my opinion this writ of mandamus should not be granted. Assuming that the Court of Civil Appeals exceeded its jurisdiction in granting the writ of mandamus, yet that in itself does not justify or warrant the court's actions in setting it aside at the behest of these relators.

There are certain well-established rules that govern the exercise of this extraordinary power. Mandamus is not issued as a matter of right, but rests largely in the sound discretion of the court. The writ will not be granted unless the petition shows that the relators have a clear right to the writ. Although mandamus is a common-law writ its issuance is largely controlled by equitable principles. Callahan v. Giles, 137 Tex. 571, 155 S.W.2d 793; Westerman v. Mims, 111 Tex. 29, 227 S.W. 178; Munson v. Terrell, 101 Tex. 220, 105 S.W. 1114; Moore v. Rock Creek Oil Corporation, Tex.Com.App., 59 S.W.2d 815; American Book Co. v. Marrs, 113 Tex. 291, 253 S.W. 817; City of Sherman v. Langham, 92 Tex. 13, 40 S.W. 140, 42 S.W. 961, 39 L.R.A. 258.

In Westerman v. Mims we quoted and adopted the following rule:

" 'While the remedy by mandamus is not equitable, but strictly legal, yet by analogy to the principles prevailing in courts of equity it is a uniform requirement that the relator in seeking this remedy must come into court with clean hands.' "

In that case we also quoted from American Mortgage Co. v. Rosenbaum, 114 Ohio St. 231, 151 N.E. 122, 59 A.L.R. 1368:

"The principle involved in this case is not new, but, on the contrary, is very old, very simple, and very fully in accord with good sense and common honesty; that is to say, one may possess a legal right, unconditional in character, with respect to the enforcement of which he may avail himself of all legal remedies applicable thereto, and, still, if the results which must attend and follow the enforcement are such as will shock the conscience of a court of equity, that court, if asked to issue its mandatory injunction as an aid to

such enforcement, should, in the exercise of a sound discretion, deny the application and leave the party to pursue his legal remedies. Extraordinary writs are issued by courts of equity to prevent and correct wrongs, but are not employed to promote wrongs."

Turner v. Fisher, 222 U.S. 204, 209, 32 S.Ct. 37, 38, 56 L.Ed. 165, speaks to the same effect.

In Westerman the relator sought to enforce an undisputed legal right. Nevertheless the writ was denied because the relator did not exhibit good faith and conscience and was in violation of a moral obligation. In that case the court expressly classifies the issuance of a writ of mandamus as discretionary.

We quote from Moore v. Rock Creek Oil Corporation as follows:

"It must be borne in mind that the enforcement of the right is by mandamus. Such a writ is not issued as a matter of right, but in the exercise of a sound judicial discretion which allows the court to view other considerations than the mere legal right of the relator."

With these principles in mind let us see if the relator, Ancel M. Autry, has acted in good faith, has come into this court with "clean hands" and has shown himself entitled to invoke the equitable powers of this court. Let us consider whether the writ is being employed to correct or promote a wrong.

At the outset of this controversy Autry and his wife, Anita, with their six children were domiciled in Montgomery County, Maryland. More than four years ago Autry brought the five oldest children to Texas and subsequently announced to Mrs. Autry that he would not return. Certain proceedings then took place which are not material here. In 1959 Mrs. Autry, having regained possession of the children, filed suit for custody in Maryland, Autry was duly served with process and in that suit filed a plea to the jurisdiction as well as a motion requesting further time to file an answer. Actually he did not answer to the merits. Admittedly the Maryland court had jurisdiction of the subject matter. During the pendency of that suit Autry, without the knowledge or consent of his wife, obtained possession of the children and returned with them to Texas. He has compelled her to retain counsel and defend a suit brought by him in Texas for divorce and custody which the trial court dismissed for want of jurisdiction. That judgment of dismissal was affirmed by the Court of Civil Appeals, 350 S.W.2d 233, and Autry's application for writ of error was dismissed by us for want of jurisdiction.

On the 4th day of January, 1961, the Maryland court entered a decree awarding Mrs. Autry the custody of the five oldest children.[1] In order to obtain possession of the children to which she had an unqualified right by virtue of the Maryland decree she availed herself of her only possible recourse unless resort was had to force or stealth, namely, that of seeking a writ of habeas corpus from the Van Zandt District Court on January 10, 1961. Autry thereupon filed his cross-action alleging that due to changed conditions and circumstances that had transpired since the Maryland decree he should be awarded the custody of the children. Due to the unfortunate illness and subsequent resignation of the judge of that court the matter was not set for hearing until February of this year when the successor judge refused to grant to her the possession of the children, holding that the issue of custody must

1. The El Paso opinion, 359 S.W.2d 272, 276, recites that relator, Judge Crofts, admitted in his answer that the Maryland court did award custody of the children to Mrs. Autry on that date. Additionally there is attached to respondent's brief what purports to be a photostatic copy of this decree of the Circuit Court for Montgomery County, Maryland, certified by the clerk of that court to be a full, true and correct copy from the record of proceedings in that court.

be tried on the merits of the cross-action. On application the Court of Civil Appeals granted the writ of mandamus in question here. 359 S.W.2d 272.

Autry's removal of the children from Maryland after the jurisdiction of the court of that state had attached was wrongful and contemptuous. He made no attempt by legal and orderly process to obtain possession or custody. The determination of the forum to try out the right to custody should not be made to turn on such a circumstance. He has refused to surrender even temporary custody of the children to his wife and has flouted the decision of the Maryland court. In his cross-action filed in the habeas corpus proceeding brought by Mrs. Autry, Ancel Autry seeks the custody of these children alleging that he is a proper person to have the care and custody rather than Mrs. Autry on the ground that he has had and exercised that custody since August 14, 1958, and that during that time the children have been receiving the best of care. In the alternative he asserts that the "conditions have completely changed; that because of the changed conditions it would be meet, wise and advantageous to said minors to place them in the care, custody and control of Ancel M. Autry". The pleading is wholly silent as to when the conditions changed or what changes took place.

In Short v. Short, Tex., 354 S.W.2d 933, we did hold that under somewhat similar circumstances the district court had jurisdiction to pass upon the question of changed conditions, but in that case the issue had already been tried and a final judgment had been entered. The question here is not so much one of jurisdiction, but whether that jurisdiction should be exercised under the rules of comity. The authorities relied upon in that case have refused to lay down any hard and fast rule. In Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R. 2d 1, we said:

"The foregoing does not, of course, mean that our courts should take jurisdiction to award custody in every case where the child and the parties contending for its possession happen to be here before the court. Nor does it mean that a child's foreign legal domicile is not an important consideration in cases of this kind. We certainly do not imply that our courts should be accessories after the fact to disorderly practices of individual parents or others who thus seek to avoid the normal processes of justice by ex parte determination of what they happen to consider a more propitious form. A review of the decisions bearing on the subject shows the impracticability of trying to formulate rules in other than the most general terms. * * * "

Knollhoff v. Norris, 152 Tex. 231, 256 S.W. 2d 79 was a venue case. All parties were domiciled in the State of Texas. Of course any court anywhere at any time has the authority as well as the obligation to protect children against possible harm when jurisdiction has been invoked.

In Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, a case involving the question of jurisdiction under somewhat similar facts we said:

"* * * Whether our courts have and will exercise jurisdiction depends in part upon domicile and also upon broader considerations, including among other things the physical presence before the court of the child and the contesting parties, and the general situation affecting the ability of the court to form an intelligent judgment on what will be best for the child's welfare. Here the facts show that the child and both parents were before the court; the husband is still a Texas domiciliary; most of the relevants facts occurred in Dallas, where the domicile of all of the parties had been until only a few months before the trial, and apparently all important witnesses actually were present and testified. Under these facts we think that the Texas

court was in a better position to pass intelligently on the matter of the child's welfare than the courts of Virginia, and therefore that the Texas court had jurisdiction to award custody."

The converse of that should be true, namely, that if the courts of Maryland are in better position to pass intelligently on the matter of changed conditions, then the Texas court should not exercise jurisdiction. If there had been any material change in conditions which would affect the welfare of these children, it would seem that the courts of Maryland should certainly be in better position to pass upon that question than the Texas courts.

The court's opinion in this case recites that "the question now before us is which court has the jurisdiction to determine the right to possession of the children on habeas corpus". Undoubtedly the Van Zandt District Court had jurisdiction to determine that very question. It was for that purpose that Mrs. Autry filed her application for writ of habeas corpus, but that is the question the district court refused to decide pending the trial of Autry's claim for custody based on changed conditions, and the district court will naturally follow that procedure upon the granting of this writ of mandamus.

What we now have is that despite the award of custody by the Maryland court to Mrs. Autry, possession and custody will be continued in the father until such time as the district court tries this case and enters a final judgment. If Mrs. Autry is successful, she will have to await the outcome of an appeal to the Court of Civil Appeals and then a petition for writ of error. Not even then will she necessarily obtain possession or custody, for again she may be confronted by a petition alleging changed conditions which will give the district court jurisdiction again to hear evidence and try out the case and so on ad infinitum. To enable Mrs. Autry to withstand these frustrating experiences and bear the expense of traveling back and forth from Maryland to Texas, maintaining herself, and paying the lawyer's fees and court costs, she would have to be possessed of some means and considerable determination.

This matter of abduction of children by one parent from another rightfully in possession, or even wrongfully for that matter, and carrying them into a distant state, happens all too often. Not only is it contrary to good order but is fraught with serious consequences to the mental well-being of the children. The courts should rather encourage the use of legal processes than to reward one who takes the law into his own hands. In my opinion the relator has not shown himself entitled as a matter of equity to the issuance of this writ.

While the action of the Court of Civil Appeals may have been erroneous it is not so clear to me that it exceeded its jurisdiction. In affirming the judgment of the dismissal of Autry's suit by reason of the pendency of Mrs. Autry's suit in Maryland, it inferentially held that Mrs. Autry was entitled to possession and temporary custody of the children. The order of that court complained of here actually sought to accomplish no more than to have the possession of the children placed in the hands of Mrs. Autry. That order reads as follows:

"Mandamus is granted and respondent, Judge of the 86th District Court of Texas, is hereby directed to forthwith issue his order remanding the custody of the five children involved herein to the relator, and it is so ordered."

The order did not deny the right of the district court to try the asserted cross-action on its merits pending the disposition of the cross-action. It may also be construed as directing the relator, Judge, to proceed to hear the writ of habeas corpus apart from the cross-action and enter the only order that the court could reasonably have entered, since the judgment in the Maryland

 

case had become final. Arts. 1823 and 1824, Vernon's Annotated Civil Statutes.

I would deny the writ of mandamus.

NORVELL and STEAKLEY, JJ., join in this dissent.