Syble Mae FONTAINE, Appellant,

v.

Thomas J. FONTAINE, Appellee.

No. 15510.

Court of Civil Appeals of Texas.

Dallas.

May 29, 1959.

Joseph M. Stuhl and John Fox Holt, Dallas, for appellant.

Norman R. Crozier, Jr. and William W. Sweet, Jr., Dallas, for appellee.

YOUNG, Justice.

By this suit, appellee, father of Kenneth Wayne Fontaine, sought to modify that portion of a divorce decree awarding custody of the child to the former wife and mother to the end that such custody be given to him. On ex parte hearing he had secured temporary possession and on trial to the merits, final custody was taken from Syble Mae Fontaine and placed in Thomas J. Fontaine, subject to the former's right to have the child with her during the summer vacation months. Said original divorce decree was further modified so as to relieve him of the $25 per month provision for child support. An appeal has been duly prosecuted from such judgment.

Defendant was a woman of some 40 years of age and plaintiff several years older at time of trial (May 6, 1958) and the boy nearly 10 years old. The parties were married in 1948, Mrs. Fontaine obtaining a divorce on May 24, 1954, the husband signing a waiver of citation. Ever since the divorce, Mrs. Fontaine has lived at 642 Pembroke Street, Dallas, Texas, on property owned by her and on which she is making monthly payments. She has been employed as bookkeeper for various concerns through the years, now at a salary of $275 per month. She supplements said income by a long practice of renting rooms to men or women and a daughter by a previous marriage, fifteen years of age, has lived with her at all times. Since the divorce and except when Kenneth was in custody of the father (under circumstances as hereinafter related) she has had the boy enrolled in the John F. Peeler Public School; stating that she has a housekeeper at the home to care for him while away at work. Appellee Fontaine was formerly an itinerant construction worker, but presently employed by a company engaged in extensive Government Housing projects in Texas and adjacent States. He remarried in November 1956 and now lives at Big Spring, the place of his company operations.

In primary points appellant asserts a clear abuse of discretion on part of the trial court in rendition of the judgment appealed from because of no evidence in support of a change of custody; at least, that such a ruling was against the great weight and preponderance of testimony, which, in the main, was not disputed. In this connection she argues that the court gave undue weight to her alleged relinquishment of custody to the father over some 15 months, beginning December 1, 1956, which *is* disputed. About the date just mentioned, Kenneth sustained personal injuries which were slight but Fontaine was notified of the accident; he coming to Dallas from Alexandria, Louisiana, his then residence. Appellant says the message to the father was to get financial assistance, she having received no weekly support as required by

the divorce decree, but on Fontaine's insistence, permitting the boy to go with him only over the weekend. Appellee's testimony here is in conflict; he stating that she gave unqualified consent to his taking Kenneth to Alexandria, which he did, placing the boy in public school there after purchase of suitable clothing, etc. At any rate, this status continued until June 19, 1957, when appellant came to Alexandria, resumed custody of Kenneth and brought him back to Dallas; she accounting for the interval of several months time by the statement that she had been unable to sooner ascertain the whereabouts of appellee.

A month later appellant sustained personal injuries, necessitating hospital confinement; she notifying Fontaine and, according to her, asking only for financial assistance. The father at once came to Dallas, and according to him, being asked to again take Kenneth in charge, which he did, placing him in school at Alexandria, Louisiana, then in Tennessee, and later at Big Spring, Texas, where appellee's job had required him to go. It was in March 1958 that appellant came to Big Spring and brought Kenneth back to Dallas; appellee filing suit here in May 1958 for modification of divorce decree after securing possession of Kenneth perforce of ex parte court order.

▪ Concerning above two occasions of voluntary relinquishment of custody to appellee, as he contends, same has no particular bearing on the controlling issue of changed conditions. In no wise was she thereby precluded from later asserting parental rights. Oldham v. Oldham, Tex. Civ.App., 135 S.W.2d 564; Stinson v. Rasco, Tex.Civ.App., 316 S.W.2d 900.

There was a further conflict in the record relative to amounts paid by Fontaine for support of the boy while in custody of the mother; she testifying that only one $25 payment was made; other monies sent by Fontaine from time to time being to cover his personal obligations; he claiming that the amount of payments made over the years totalled several thousand dollars. He further testified that he was away on an Oklahoma construction job at time of the May 1954 judgment of divorce and was not told about it until September 1955, continuing to reside at 642 Pembroke Street until then, when she told him to get out; that in 1954 he had no regular work; remarrying in November 1956, now with permanent job as superintendent of work with a large construction company, base salary of $125 per week, maintaining a home at Big Spring, the relationship between his present wife and Kenneth being of mutual affection.

Here it should be noted that appellee's petition for change of custody charged appellant to be presently an unfit person to have care and possession of Kenneth; of her failure to provide proper clothing and food; of intemperance on her part and misconduct (to state it mildly) with a named person. Such charges appear to have been abandoned at the trial; appellee tacitly admitting that no change had occurred in appellant's home environment or school facilities. He was questioned as follows on cross-examination: "Q. In other words, the only thing you are basing the thing on is the fact that you are remarried, and that you believe now that you are prepared to take care of the child, and that you weren't in May 1957? A. I believe that would be it, yes, sir". Several witnesses attested to the good character and reputation of appellant; she stating with reference to Kenneth that an attendance upon a neighboring Sunday School was required of him. Normal feelings of affection appear to exist between mother and son, and that she is a fit person for continuance of custody is evidenced by the partial award to her.

▪ It is familiar law that "where the custody of a minor has by divorce decree been awarded to one party, one seeking a modification of the decree changing the award has the burden of establishing changed conditions arising subsequent to the date of the decree which would mate-

rially affect the welfare of the child." Neal v. Medcalf, Tex.Civ.App., 244 S.W. 2d 666, 670 [10]. "The party seeking a change of custody has the burden of proving that since the judgment of divorce conditions have so changed as to render the other parent an improper custodian, or that the welfare of the child demands a change." 15–B. Tex.Jur. p. 104. Appellee admits to unchanged conditions with respect to the mother as custodian; simply asserting his remarriage which, in itself, is uniformly held not to be a sufficient ground or reason for modification. Tavares v. Tavares, Tex.Civ.App., 207 S.W.2d 916; Lovelace v. White, Tex.Civ.App., 209 S.W. 2d 422; 43 A.L.R.2d 364. Thus far, manifestly, appellee has not shown himself entitled to the relief sought. In Simmons v. Hitchcock, Tex.Civ.App., 283 S.W.2d 84, 87, where the mother having remarried was seeking change of custody of daughter from grandparents who had been awarded custody by prior divorce judgment, relief was denied by the trial court. The El Paso Court of Civil Appeals in affirming, stated: "Here the plaintiff has not shown any change in the conditions under which the child now lives that would suggest or require a change, but has predicated her case almost entirely on the fact that she is the natural parent, and alleges that she is now able to give the child a home."

Nevertheless in the instant case, an able and conscientious trial judge (now deceased) has ordered a change of custody. No finding of fact or conclusions of law were requested or filed; nor does the judgment contain affirmative findings on changed conditions as required by appellate decisions. See Roberts v. Tippett, Tex.Civ. App., 239 S.W.2d 859; Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188. We are led to the assumption therefore that the judgment in question was based upon the following occurrence:

Additional to the statement of facts it was stipulated by the parties: "After the close of the testimony and after all parties had rested but before the rendition of judgment, the Judge, on his own initiative, and in the absence of any agreement by the parties or their attorneys, talked to the minor boy, Kenneth Fontaine, in his chambers. The attorney for the defendant requested permission of the Judge to be present at such conference and to be permitted to examine said minor boy, which said request was denied by the Judge." No further protest was registered to above procedure. Any statements of Kenneth made to Judge McCormack in this office conversation is not shown, but from hearsay statements appearing in the testimony of Mrs. Edna Fontaine (appellee's present wife) and Fontaine, [1] we may infer that the boy had privately indicated a preference in line with the court's change of custody. All this is mere surmise and conjecture but we have nothing more tangible in the record bearing on changed conditions or that the child's best interest lay with an award to appellee. "The desires of minor child, other things being equal, are an element to be considered in determining custody of child, unless adverse party has produced such frame of mind in the child." Neal v. Medcalf, Tex. Civ.App., 244 S.W.2d 666, 667, Syl. 9. "In resolving the general question of what will best subserve the interest and happiness of the child, its own wish and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment." Richards v. Collins, 45 N.J.Eq. 283, 17 A. 831, 832. In Williams v. Guynes, Tex. Civ.App., 97 S.W.2d 988, 989, the trial judge talked alone with the child, a girl, seeking information on where she preferred to live, with no objection from the parties. The child then expressed a desire to live with its mother, and it was so ordered. On appeal, such procedure was approved, the ap-

---

1. The witness first named testified that on day before the trial the boy had told her that he preferred to live with his father and to visit his mother during the summer months; the father likewise testifying that Kenneth had expressed a desire to stay with him.

pellate court holding "it is the right and duty of the trial court to ascertain any and all of the facts and to make such investigation of conditions which in his judgment will assist him in reaching a proper solution of the child's problem. * * * It may be that the sex and age of the child had much to do in awarding the custody to the mother."

 In the instant situation, appellant acquiesced in the court's procedure above outlined by failing to object; but even so, the court should have permitted the attendance of counsel at such private conference upon request and due report thereof reflected in the record, if indeed same was to furnish any basis for the ruling made.

The record before us however is lacking in proof of changed conditions; and in consequence the judgment under review must be reversed and the cause remanded.