**Ancel M. AUTRY et al., Appellants,**

v.

**Anita D. AUTRY, Appellee.**

No. 5462.

Court of Civil Appeals of Texas.

El Paso.

July 25, 1962.

Sanders & Stanford, Canton, Wynne & Wynne, Wills Point, for appellants.

W. Ernest West, Canton, Wilbur J. Barnes, Rockville, Md., for appellee.

PER CURIAM.

This is an ancillary application for writ of mandamus brought by relator, Anita D. Autry. Relator is a resident of the State of Maryland and the mother of six children, the issue of her marriage to Ancel M. Autry, from whom she was divorced, a mensa et thoro, in the Circuit Court of Montgomery County, Maryland, on March 2, 1959. Custody of all six of the children was awarded to relator by the Maryland court. However, after the custody proceeding was initiated and jurisdiction of the Maryland court over the children had attached, relator's former husband, Ancel M. Autry, who was then living in the State of Texas, came to Maryland and surreptitiously obtained possession of the five oldest children of the marriage and fled with them to Texas, leaving the youngest of the six children with relator in Maryland.

In an effort to defeat the jurisdiction of the Maryland court over the five children, said Ancel M. Autry undertook to invoke the jurisdiction of the district court of Van Zandt County, Texas, by attempting to prosecute a second suit for divorce (although he unquestionably knew at such time that relator had already obtained from him a divorce a mensa et thoro by decree of the Maryland court). In such suit, cause No. 10,186 on the docket of the District Court of Van Zandt County, Texas, Autry also petitioned the court for custody of the five children. As a result of the filing of such action, relator was forced to travel from Maryland to Texas to defend against this suit. She filed a plea in abatement, setting up the prior decree of divorce from the Maryland court, and a plea to the jurisdiction based on the contention that the Maryland court had first obtained jurisdiction over the children involved. Relator also filed a cross-action for custody of the five children.

Following a full hearing in which the trial court heard testimony concerning their previous marital difficulties from both Ancel M. Autry and relator herein, Anita D. Autry, as well as testimony bearing on the fitness of the respective parents to have the care and custody of the five minor children here involved, it was the conclusion of the trial court that jurisdiction of all matters involved in the cause then pending had been fixed in the Circuit Court of Montgomery County, Maryland, more than nine months prior to the filing of such cause, and that defendant's (relator's) plea in abatement and plea to the jurisdiction were well taken and that both pleas should be sustained, and that the suit of the plaintiff, Ancel M. Autry, should be dismissed. Judgment sustaining the two pleas and dismissing the cause was made and entered by the trial court on February 13, 1960. Plaintiff Autry excepted and gave notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, at Dallas, Texas. Thereafter, by order of the Supreme Court of Texas, the case was transferred, for purposes of equalizing the docket, from the Dallas court of civil appeals to the Eighth Court of Civil Appeals at El Paso, Texas. In an opinion by this court, dated September 27, 1961 (Autry v. Autry, 350 S.W.2d 233), we affirmed the judgment of the trial court, and thereafter writ of error in said cause was denied by the Supreme Court of Texas (Cause A–8720) on January 24, 1962.

The proceeding below, in which relator's plea in abatement and plea to the jurisdiction were sustained and judgment of dismissal entered, was had before the Honorable A. A. Dawson, the then presiding judge of the District Court of Van Zandt County, Texas. From Judge Dawson's order of dismissal an appeal was taken.

Before the appeals were concluded, Judge Dawson was forced to retire from the bench by reason of ill-health. He was succeeded by respondent, the Honorable Thomas H. Crofts, who was appointed to fill out the unexpired term of Judge Dawson. Judge Crofts qualified, took the oath of office, and assumed the duties of Judge of the 86th Judicial District of Texas on November 1, 1961.

■ All of the proceedings leading up to the above-mentioned appeal were tried before respondent's predecessor in office, the Honorable A. A. Dawson. At the time of such trial Judge Dawson not only had in personam jurisdiction over both parents of the children, but the children themselves were residing in Texas and were physically before the court. Prior to the Texas proceeding, the children were residing with their mother (relator) in the State of Maryland, and the jurisdiction of a Maryland court to decide their custody had already been invoked and had attached before their father (Ancel M. Autry) took the children and fled with them to Texas. We believe that under the facts of the case as outlined above, Judge Dawson might have done either of two things: First, since both parents were before the court and the children were residing within the boundaries of the state, he could have taken the position that the welfare of the children was threatened, requiring him to act for the state as an interested party in order to protect and provide for the best interest and welfare of children residing within its boundaries; or, second, he might (as we believe he actually did do) conclude that neither parent was unfit to have the care and custody of the children and that he should, in such case, act in a disinterested capacity for the sole purpose of determining the personal right of the parents with respect to the children.

It has been held that when both parents are before the court and the child or children are residing within the state, either of the two alternatives is applicable. A court having acquired jurisdiction over the persons of the parents, it may determine their individual rights, or it may, in behalf of the state, in the exercise of its function as parens patriae, act to protect and provide for the best interests of its infant subjects. Such concept of jurisdiction is basic and is recognized in most courts. (See U. of Pa.L.Rev. 712, and 4 A.L.R.2d 15).

At the trial, the evidence reflected that the children were being well cared for. Their immediate welfare was not threatened, and no unusual or emergency situation existed requiring the Texas court to decide the question of proper custody on the merits. Further, the mother of the children (relator) was not shown to be an unfit person, but on the contrary the evidence reflected that she had a strong maternal interest in and for each of her children, and the record contains nothing to indicate that the welfare of the children would have been adversely affected if placed in her custody.

■ Judge Dawson's refusal to decide the question of custody and his dismissal of the fathers' prayer for custody because of the pendency of relator's action for custody in the Maryland court affirmed, as between the parties, the right of relator to have the question of proper custody decided on the merits by the Maryland court. To give effect to such decree, only a single ministerial act remained to be performed by the trial court, and that was to grant or remand the children to relator, who was their last lawful custodian, without prejudice to the right of the father of the children, or other claimants, to apply to the Maryland court for change of custody as the best interests of such children might appear to demand. Due to the fact that an appeal was taken from the trial court's order of dismissal, Judge Dawson very properly deferred entering a final order remanding the children to relator, or permitting them to be removed from Texas, until the questions raised by the appeal had been decided.

Relator's application for writ of mandamus is ancillary to the judgment rendered by Judge Dawson and affirmed by this court. It is now a final judgment. If it affirmed, as between the parties, the right of relator to have the question of proper custody decided by the Maryland court (which we think it did), relator is entitled to the enforcement of that right. If there has been a change of condition since the

rendition of such judgment, its enforcement would in no wise deprive the father of the children, or other claimants, of the right to apply to the Maryland court for change of custody. We believe the duty imposed upon this court to enforce such decree is the same as would have been the case had Judge Dawson elected to hear and determine the question of custody on the merits. He clearly had the authority to do so; and, in such case, had the judgment appealed from awarded relator custody of the children (the actual remand of the physical custody of the children being deferred until a determination of the appeal), assuming such judgment was also affirmed, it would remain ineffectual until the trial court had performed the last ministerial act required to give it force and effect, namely, remand of the physical custody of the children to their mother. In either case, the successful party should not be required to re-litigate the matter following the conclusion of an appeal in order to obtain possession of the children. Where the losing parties have remained in possession of the children pending the appeal, as they have in this case, and fail or refuse to surrender possession after the judgment has become final, or where the trial court fails or refuses to perform a ministerial act, mandamus will issue.

As mentioned above, the order appealed from was entered by the trial court on February 13, 1960 and did not become final until almost two years later, when the Supreme Court of Texas, on January 24, 1962, entered its order dismissing petitioner's (Ancel M. Autry's) application for writ of error for want of jurisdiction. During such period Judge Dawson resigned from the bench and was succeeded by the Honorable Thomas H. Crofts. Relator contends that she became entitled to possession of her children as soon as all appeals were resolved in her favor, and that it became her right to have and obtain all necessary and proper writs, remedies and procedures in the Texas courts in aid and defense of her right to possession of said children. Relator charges that Judge Crofts has failed and refused, and continues to fail and refuse, to perform his duty and remand said children to the custody of relator, but insists upon holding another custody hearing and trying the entire issue of custody de novo, on the ground that the presence of the minor children gives him jurisdiction to do so, and that he can determine the issues of jurisdiction and custody over and over, as often as the matter is presented to him.

Through no fault of her own relator has now, for a period of more than two years, been denied access to and possession of her children. In passing upon the question of the relator's right to have the custody of the children determined by the Maryland court, Judge Dawson said:

"Under the record here there is no question but what the Maryland Court got jurisdiction first, and I can't say to them that 'You got jurisdiction, and you have disposed of the divorce, but you have not disposed of the custody of the children.' The custody of the children were part of the jurisdiction that (Maryland) court got * * *."

He then very promptly sustained both of relator's pleas, and dismissed the father's application for custody. In the absence of the appeal that followed, relator would have been entitled to immediate possession of the children, subject to the right of the Maryland court to determine the issue of permanent custody. Relator contends, and respondent (Judge Crofts) admits, in the answer filed herein, that the Maryland court did, on January 4, 1961, award the custody of the children to relator, but respondent asserts that relator thereafter, on January 10, 1961, again invoked the jurisdiction of the Texas court to determine, de novo, the question of custody, by filing an application for writ of habeas corpus to obtain possession of the children by virtue of the Maryland decree.

■ Admittedly, no formal action was taken on relator's application for writ of habeas corpus until more than a year later and after the appeals in the former case had been resolved in relator's favor. Judge Dawson was still judge of the 86th Judicial District when the application for the writ was filed, and according to the sworn pleadings on file herein, Judge Dawson executed (signed) the writ, but held the matter in abeyance pending a determination of the appeals.

Relator's application for writ of habeas corpus was filed independently of the case then on appeal, and was based on an asserted right to possession of the children by reason of the decree of the Maryland court awarding custody of the children to her. It was docketed as a new case and given a new number upon the docket of the court. Nevertheless, Judge Dawson elected to take no official action on the matter until the appeal in the former case had been decided. Technically, relator or her attorneys may have acted improvidently in filing a second suit before the first was finally determined. We are of the opinion, however, that the disposition of the first rendered moot any question that might be resolved by the second, and that the filing of the second suit conferred upon the district court no greater power or authority than it already possessed to determine the custody of subject children. By the same token, we are of the opinion that the cross-action filed by respondent was not sufficient to confer jurisdiction upon the court to re-litigate the matter then on appeal.

■ Mere change of circumstances normally incident to the passage of time occasioned, as it has been here, by undue delay not caused by any fault of relator, but due solely to the tedious and sometimes cumbersome processes of our own state justice is not, in our opinion, sufficient change of circumstances to warrant a denial by the trial court of the right of the last lawful custodian to immediate possession of the child or children; nor do we believe such normal change of circumstances as are apt to occur by reason of the adaptation of the child or children to a particular environment, personal attachments, et cetera, would be sufficient to warrant the trial court in ordering a trial de novo on the issue of custody.

At this writing, more than two years have elapsed since Judge Dawson entered his order of February 13, 1960 dismissing the application of the father for custody of the children, thereby declining to take jurisdiction of the custody matter and affirming, not only the right of the Maryland court to determine the question, but also the right of the mother of such children (relator) to have the Maryland court pass upon such question. It is inevitable that some changes must have taken place in the lives of the children during these two long years. They have undoubtedly become accustomed to their present surroundings and environment; no doubt they have made many new friends at play and at school and, in all probability, they are healthy, happy and contented with their present circumstances. By the same token there is no reason to believe the children would now be any less happy, healthy and contented if the situation had been reversed, with the children in the care and custody of their mother for the past two years instead of with their father.

In our original opinion we observed that the controversy presented by this case was all too typical of divorce cases involving the custody of children. Unfortunately, the courts of the several states, including those of Texas, must share part of the blame for a shameful situation, brought about by reason of the adoption of policies and attitudes by courts and judges which do nothing to discourage the unlawful acts of parents, but which, on the contrary, actually tend to foster and encourage violence, kidnaping by parents, or the evasion of the jurisdiction of one court by the physical removal of the child or children to the jurisdiction of a foreign court. Such

actions are encouraged so long as a parent has reason to believe that he may fare better in the foreign court. All too often, particularly in child custody cases, policies and attitudes adopted by our courts have resulted in decisions holding, in effect, that the only proper place to rear a child is within the boundaries of the particular state in which that court has jurisdiction. Even though the court finds that there is a prior, valid, subsisting judgment of another state awarding such custody, it may, in such cases, limit its consideration of the merits to conditions which have changed since that foreign judgment was rendered; but again, all too often, courts tend to find "changed conditions" (regardless of how inconsequential they may be) to exist in favor of a local citizen. Such practices result in neither equity nor justice, and not only encourage unlawful acts on the part of parents, but tend to create strife and foster ill-will between courts of different states, and totally ignore principles of comity, which, we believe, have their best application in cases such as this.

Barring exceptional circumstances creating an immediate emergency, we believe it is the duty of a court, on finding a child within its borders who is either domiciled in another state or has been wrongfully removed from such other state to escape jurisdiction in a pending proceeding, not to decide the question of proper custody on the merits, but to immediately grant or remand such child to the last lawful custodian without prejudice to the right of the other claimant or claimants to apply to the foreign court for a change of custody as the best interest of the child might appear to demand.

We denied a prior application for ancillary writ of mandamus filed by relator by reason of technical defects therein, but we still adhere to the basic conclusions asserted therein, and they have been repeated here.

It follows that we are of the opinion that relator's application for writ of mandamus should be granted. Judge Crofts is bound by the judgment entered by his predecessor in office, and it having become final, there remains but a single ministerial act to be performed, and that is to remand the children involved to the custody of relator. If a duty to perform the ministerial act was imposed upon Judge Dawson by reason of the judgment entered, it was not extinguished by his resignation or retirement from office; and respondent, as his legal successor in office, is also bound.

Mandamus is granted and respondent, Judge of the 86th District Court of Texas, is hereby directed to forthwith issue his order remanding the custody of the five children involved herein to relator, and it is so ordered.

No motion for rehearing will be entertained.