Fred M. DOHRMANN, Appellant,

v.

Lesly Lee Dohrmann CHANDLER, Appellee.

No. 421.

Court of Civil Appeals of Texas.

Corpus Christi.

Oct. 31, 1968.

Rehearing Denied Nov. 27, 1968.

Bell & Gwin, by Lawrence P. Gwin, Bay City, Maurice Hunke, Dickinson, N. D., for appellant.

Carsner, Carsner & Bissett, by Gerald T. Bissett, Victoria, for appellee.

## OPINION

NYE, Justice.

This is a child custody case. Fred M. Dohrmann brought habeas corpus proceedings to obtain the custody of his three year old daughter Malinda Lee Dohrmann from

her mother. He alleged that he was entitled to custody under and by virtue of a judgment in North Dakota. The mother, Lesly Lee Dohrmann Chandler, answered and by cross-action sought judgment awarding the custody of the minor child to her. The father filed pleas to the jurisdiction of the court to entertain the cross-action, special exceptions, and other appropriate pleas to dismiss the mother's action for alternative relief.

The father and mother were divorced and the custody of Malinda was awarded to the father in a decree rendered by a North Dakota court on September 18, 1967. This habeas corpus action was commenced on November 15, 1967, concluded by judgment and order based upon a jury verdict which found that a material change of conditions had occurred and that the best interests of the child required a change of custody to its mother. Basically, the father contends that there is no evidence or insufficient evidence of a material change in conditions and no evidence or insufficient evidence to warrant a change of custody; therefore, the trial court was without jurisdiction to enter any order other than commanding that immediate possession of the minor child be delivered unto the possession and custody of the father.

The record shows that the father was a farmer and rancher and that he and the mother of the minor child lived on his place in North Dakota during their marriage. After he filed his petition for divorce the North Dakota court ordered that the temporary custody of the minor girl be placed with her mother, the appellee. She then moved to Texas, taking Malinda and two other children of hers who were not issue of that marriage. Almost a year later the North Dakota court entered its judgment. The court awarded the care, custody and control of the minor child to the father subject to reasonable visiting rights which were granted to the mother. Armed with this decree the father came to Matagorda County, Texas, to obtain the minor child. The mother refused to give up the child, whereupon the father filed his application for writ of habeas corpus.

One of the father's basic arguments is that the trial court erred in overruling his plea in abatement and in exercising its jurisdiction for the purpose of changing the custody of the minor child. His contention is that the trial court does not have jurisdiction over the cross-action unless this case proves to be an "exceptional case"[1] which he argues is a prerequisite to the exercise of jurisdiction by the Texas courts if they are to make an independent determination of the rights to the custody of this minor child. We have no quarrel with this argument and contention.

The Texas courts have traditionally given full faith and credit to a child custody decree of a sister state and will not order a change of custody in the absence of evidence that a subsequent and material change of conditions has taken place. Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293 (1938); Short v. Short, 163 Tex. 287, 354 S.W.2d 933 (Tex.Sup.1962). The judgment decreeing the custody at the time it is entered, is res judicata as to the questions concerning the best interests of the child at that time. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955). However, proof of a material change of conditions since the decree by the sister state, will support a change of custody if the same is for the best interests of the child. Short v. Short, supra. For the non-custodial parent to prevail in a suit which involves a change of custody, that parent has the burden of proof to show that such a material change of conditions has taken place since the entry of the first decree, in order to escape the bar of res judicata. If there has been no such change of conditions since the entry of the decree in North Dakota, the Texas court would be precluded from exercising jurisdiction by the full faith and

1. Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.Sup.1966).

credit clause of the Constitution of the United States. Since a material change of conditions is essential to a change of custody, the procedure would be that once the trial court had obtained jurisdiction of the persons it would then be authorized to try the facts to determine whether a material change of conditions affecting the best interests of the child is shown. If such change of conditions is shown and if they make out the exceptional case, the trial court in its discretion can then make a new and independent determination. of child custody rights. Bukovich v. Bukovich, supra. Such determination once made, will not be disturbed on appeal in the absence of abuse of discretion. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787; Mumma v. Aguirre, 364 S.W.2d 220 (Tex. Sup.1963), and Bukovich v. Bukovich, supra.

■ Appellant has invoked the potential jurisdiction of the Texas district court by bringing the habeas corpus proceedings in Matagorda County with personal service upon the natural mother, appellee. Her answer and cross-action for custody and his pleadings in answer to her cross-action, properly brings the parties before the court and neither party can be heard to complain of the trial court taking jurisdiction. Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79 (1953).

■ The controlling consideration is the welfare of the child. The changes of conditions which affect the welfare of the child are the determining factors. There is nothing in the evidence or in the North Dakota decree which sheds any light upon the actual conditions that existed prior to the entry of the North Dakota decree. The trial court refused to permit the parties to go behind the decree to determine the state of conditions that existed at the time of the decree so that an accurate comparison could be made of the conditions that existed at the time of this trial. There was no proof of the substantive North Dakota law nor was the court requested to take judicial no-

tice of that law as permitted there by Rule 184a, Texas Rules of Civil Procedure. We therefore presume that the law relative to the granting of the original custody to one of the competing parents in our sister state is the same as that of Texas. Ogletree v. Crates, 363 S.W.2d 431 (Tex.Sup. 1963). The record shows that this small girl, less than three years of age, was taken from the temporary custody of its natural mother and given to its father. the extraordinary conditions which had to exist at the time the judgment of the North Dakota court was entered, must have been such that the best interests of the minor child were best served by placing the custody of the little girl in the hands of its natural father and limiting the natural mother to only reasonable visitation privileges.

The present record before us shows an obviously different situation existing since the divorce. Appellee has remarried and has established a home. First of all, we are not unmindful of the cases that hold that this in itself does not amount to such a material change of conditions that would warrant the trial court to exercise its jurisdiction in making a change of custody. However, the remarriage and the new home, along with other factors affecting this child's welfare, can amount to such a material change.

The appellee and her new husband have purchased some twenty acres and built a new three bedroom home where she and her husband, her two small boys, ages 4 and 6, and Malinda, the minor child, all reside in a family relationship. No such family relationship existed at the time of the North Dakota decree. She is gainfully occupied full time as a housewife and mother and her husband is gainfully employed in a nearby plant making over $1,000.00 per month. The evidence is that the appellee and her husband are partners in the raising and breeding of thoroughbred horses. This business is in addition to the husband's full time employment. They have built a barn and fences and together they work in

this enterprise. Appellee's husband testified that this is his first marriage; that he is very much in love with his wife, Malinda, and the two boys. He treats them as his children and as such he has been exercising parental authority over the children. Appellee testified that Malinda is very happy. She loves her mother and considers the boys as her brothers, with whom she plays in the family home. The evidence showed that the Texas trial judge placed Malinda in a neutral home pending the outcome of the habeas corpus proceedings. This arrangement was short lived, because Malinda became extremely emotionally upset, cried and became hysterical to the point where she could not sleep, wanting to return home to her mother. Upon being taken back to her mother the child became adjusted. On the other hand Malinda did not know or recognize her natural father when he came to Texas to get her. The evidence was that he had made no attempt in over a year to visit the child during the time the child was with her mother, although the mother had evidenced a willingness for the father to visit with the child. The father made no attempt to visit the child during the interval between the time the North Dakota decree was entered and the time the habeas corpus suit was filed, or even during the several weeks the present hearing was continued.

The father did testify that he loved the child and wanted custody of her. On cross-examination he testified that if he was awarded the child he would take her with him to live with his mother and father, the paternal grandparents, on their farm. In the meantime he would try to find a suitable spouse with whom he might marry and make a new home at his farm. The evidence is that appellee was a good mother and had kept her three children, Malinda and the two boys, with her constantly. The mother testified that her present husband has taken over the responsibility of a father; that he loves the children and his wife very much. All three of the children get along very well together. The mother

cooks for them, feeds them, cleans them and looks after their every need and care. The evidence was that the minor child was very much attached to its new found family and the relationship created thereby. There was no evidence that the mother was unfit.

The jury was asked to find from a preponderance of the evidence whether since the former judgment which granted custody of the minor child Malinda to appellant, " * * * there has occurred such a material change of condition that the best interests of· said minor child requires a change of custody?" The court instructed the jury in this regard that not every change in condition justifies the modification of a former decree of divorce awarding the custody of a minor child. Such changed conditions must be such as affects the welfare and best interests of the child and be of such nature that to leave the custody of the child as previously adjudicated would be injurious to the child and requires that the custody be changed. To this issue, the jury found that such a material change of condition had occurred. The jury further found that the best interests and welfare of the minor child would be best served by awarding her care, custody and control to her natural mother.

Vernon's Ann.Civ.St. article 4639a, as amended, says in part that:

" * * * In any hearing held in this State concerning the custody of a child, whether pursuant to a divorce cause or not, any party to the hearing may, upon assumption of jury costs, demand a jury to determine custody of the child, and the judgment of the court must conform to that determination. * * *" (Effective 1961).

As a result of this jury verdict the trial judge entered judgment changing the custody of Malinda from her father to her mother.

■■■ Appellant's points of error of no evidence, insufficient evidence and contrary to the great weight and preponderance

of the evidence requires us to examine the entire statement of facts and evaluate the same in accordance with the rules announced by the Supreme Court in In re: King's Estate, 244 S.W.2d 660. We have set forth a summary of all the evidence. Under the no evidence rule, we are obligated to consider only such evidence favorable to the verdict of the jury. We are, therefore, convinced that there was such evidence of a material change of conditions affecting Malinda's welfare that required the trial court to submit the case to the jury. Article 4639a and In re: King's Estate, supra. During the short time that the child's living arrangements were confined to the new home of Malinda's mother and her husband, Malinda's affection became a part of her environment. The mother-daughter arrangement in the new family atmosphere is a positive improvement. Malinda being of tender years now has the advantage of the companionship of her brothers in a family home. We believe that it would be detrimental to the child's welfare to destroy the present arrangements. It would not be conducive to the child's welfare, but highly detrimental, for the child to leave these conditions and go with her father to North Dakota to live with his mother and father on a farm some distance from the father's home and farm.

There is no definite guideline as to what evidence constitutes a material change of circumstances or conditions that affect the welfare of a small child. However, we believe that the same must be decided in each case according to the circumstances as they arise. We know that the jury had an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, and to assess the physical, mental, moral and emotional needs of the child. The jury's verdict binding by statute the trial court's judgment also binds our hands when supported by evidence. The trial court who also observed all of the evidence, refused to grant a new trial, and as such did not abuse its discretion. Mumma v.

Aguirre, supra; Bukovich v. Bukovich, supra. We have examined all of the evidence in the light of the rules announced by our Supreme Court and are convinced that the record here presents ample evidence to support the verdict of the jury and the judgment of the court based thereon. See Welch v. Welch, 369 S.W.2d 434 (Tex.Civ.App.–Dallas 1963); and Birdwell v. Ashcraft, 352 S.W.2d 463 (Tex. Civ.App.–Dallas 1961); Bridges v. Davis, 303 S.W.2d 870 (Tex.Civ.App.–Galveston 1957); De Gaish v. Marriott, 345 S.W.2d 585 (Tex.Civ.App.–San Antonio 1961). Appellant's points are overruled.

Judgment of the trial court is affirmed.

SHARPE, Justice (dissenting).

I respectfully dissent. I would reverse the judgment of the lower court and here render judgment that custody of the minor, Malinda Dohrmann, be awarded to and vested in appellant, Fred M. Dohrmann, in accordance with the decree of the district court of North Dakota dated September 18, 1967 and its order of October 28, 1967, overruling appellee's post-judgment motions for rehearing and modification of the prior order.

I cannot agree that the facts set out in the majority opinion or any other facts in the record are legally sufficient to show that a material change of conditions has occurred in the period of time between the North Dakota judgment (whether the date be considered as September 18, 1967 or October 28, 1967) and the trial in Texas beginning on December 4, 1967, which would authorize in the best interest and welfare of the minor child a change of her custody from her father, appellant, as ordered by the North Dakota court, to appellee, the mother.

In my view, the trial court should have sustained appellant's motion for directed verdict at the close of the evidence, and in any event should have sustained appellant's motion for judgment non obstante veredicto and to disregard the jury finding

on special issue No. 1 (that a material change of conditions had occurred since the North Dakota judgment), after the verdict was returned, and should have rendered judgment awarding appellant the custody of his minor daughter. I would sustain appellant's basic contention that there is no evidence of a material change of conditions since the North Dakota decree and that a change of custody from appellant to appellee is not authorized on the record before us.

I believe that an additional statement of the material facts, either conclusively established or testified to by appellee or Billy D. Chandler, her present husband, will be helpful.

Appellant and appellee were married December 26, 1963 at Elko, Nevada. One child, Malinda, was born to said marriage on December 12, 1964. Appellant filed suit for divorce against appellee in a district court of North Dakota in October 1966. Appellee also filed a counterclaim for divorce. The case was tried before the court from March 27, 1967 until April 4, 1967. Judgment was entered on September 18, 1967 granting a divorce to appellant and dismissing appellee's counterclaim. Custody of Malinda was awarded to appellant, her father. During the pendency of the suit, temporary custody of Malinda had been awarded to appellee. Appellee testified on the trial herein that she also had custody of two boys, Michael Rieboff and Matthew Laske; that Matthew was adopted by appellee during a prior marriage and that she had custody of Michael, who had not been adopted. Neither of the boys is related to appellant; nor are they related to Malinda Dohrmann, except to the extent that Matthew has been adopted by appellee. The sole ground for divorce alleged by appellant against appellee in the North Dakota suit was that of adultery with Billy D. Chandler. Shortly after the trial in North Dakota appellee moved to or near Blessing, Texas. Chandler had preceded her to that locality, where his parents lived. He assisted in moving horses, bought and leased land for pasture and built a house. Chandler testified that appellee and the three children moved in said house with him between about September 1 and September 15, 1967.

Appellee was personally served with notice of the North Dakota judgment, dated September 18, 1967, on September 26, 1967. Appellee's attorneys in North Dakota on September 27, 1967 filed a motion denominated as follows:

"MOTION TO AMEND THE COURT'S FINDINGS OR TO MAKE ADDITIONAL FINDINGS AND TO AMEND THE JUDGMENT ACCORDINGLY, OR IN THE ALTERNATIVE TO TAKE ADDITIONAL TESTIMONY ON THE QUESTION OF CUSTODY OF THE CHILD, MALINDA DOHRMANN, AND TO STAY THE JUDGMENT WITH RESPECT TO THE QUESTION OF THE CUSTODY OF MALINDA DOHRMANN ONLY UPON SUCH CONDITIONS FOR THE SECURITY OF THE ADVERSE PARTY AS THE COURT DEEMS PROPER"

and gave notice of hearing of same for October 27, 1967, or as soon thereafter as it could be heard. On October 2, 1967 the North Dakota district judge, pursuant to appellee's motion, entered an order staying the prior judgment "solely with respect to the question of the custody of the minor child, Malinda Dohrmann, until the hearing on said motion." On October 28, 1967 the district court in North Dakota entered an order reciting in part that appellee's motions came on for hearing on October 27, 1967, at which time she appeared through her counsel and appellant appeared in person and through counsel; and that appellee "made an additional motion for an Order Staying the Judgment insofar as the same relates to the custody of the minor child of the parties hereto; * * *" The court denied all of appellee's motions, dissolved the temporary stay of execution and ordered "That the Defendant (appellee

here) shall forthwith transfer and give custody of the minor daughter of the parties hereto, Malinda Lee Dohrmann, and her personal possessions to the Plaintiff (appellant here), as provided in the Judgment entered herein." Notice of the October 28, 1967 order was personally served on appellee at Blessing, Texas, on November 2, 1967. Later, on the same date, appellee married Billy D. Chandler. Shortly thereafter appellant came to Texas to obtain custody of Malinda, which appellee refused to surrender to him. On November 15, 1967 appellant filed his application for writ of habeas corpus in the district court of Matagorda County, Texas. The court granted the writ and on November 17, 1967, entered an order setting the case for jury trial on December 4, 1967, and further provided that temporary custody of Malinda would be placed with Mr. and Mrs. W. B. Chandler (parents of Billy D. Chandler) until the trial date. Additional pleadings were filed by all parties including a plea in abatement by appellant. Issue was thereby joined on the question of custody of the minor child. One of appellee's contentions was that the North Dakota judgment awarding custody of the minor child to appellant was not entitled to full faith and credit. That contention is not well taken; and in effect the case was tried and has been appealed primarily on the issues raised by appellee's cross-petition for change of custody, under which she had the burden of proof to establish that a material change of conditions had occurred since the rendition of the North Dakota court decree and that the welfare of the minor child required a change of custody from the father (appellant) to the mother (appellee).

On the trial of the case appellant moved for directed verdict at the close of all the testimony and after the verdict filed motion for judgment non obstante veredicto and to disregard the jury's answer to special issue No. 1, all of which were overruled. Appellant's timely filed motion for new trial was also overruled.

The majority opinion concedes that remarriage of appellee and establishment of a home do not amount to such a material change of conditions that would warrant the trial court to exercise jurisdiction to make a change of custody, but then holds that such matters along with other factors in this case affecting the child's welfare can amount to such material change. I do not agree with the latter conclusion.

In my view there was no evidence in this case of anything which could be considered in law to be a material change of conditions. Appellant's application for writ of habeas corpus was filed in the Texas district court on November 15, 1967, some 18 days after the final order of the North Dakota court entered on October 28, 1967, and approximately 8 weeks after the original order of September 18, 1967, which was stayed by the North Dakota court as to custody of Malinda until hearing upon appellee's post-judgment motions for rehearing and modification. It is thus apparent that we are dealing with a very limited period of time during which appellee was required to establish a material change of conditions affecting the welfare of the minor child.

I cannot reconcile the majority holding that a material change in conditions has been established in this case with decisions such as Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.Sup.Ct. 1966); Short v. Short, 163 Tex. 287, 354 S.W.2d 933 (Tex.Sup.Ct. 1962); Smith v. Clements, 424 S.W.2d 326 (Tex.Civ.App., Amarillo, 1968, wr. ref. n. r. e.); Heiskell v. Heiskell, 412 S.W.2d 774 (Tex.Civ.App., Amarillo, 1967, n. w. h.); Buhrman v. Buhrman, 407 S.W.2d 353 (Tex.Civ.App., Fort Worth, 1966, n. w. h.); Autry v. Autry, 359 S.W.2d 272 (Tex.Civ.App., El Paso, 1962, n. w. h.); Fontaine v. Fontaine, 325 S.W.2d 428 (Tex. Civ.App., Dallas, 1959, n. w. h.).

In *Bukovich,* where a decree of an Indiana court awarding custody to the father was involved, our Supreme Court reversed the judgments of the lower courts which had ordered a change of custody from the

father to the mother, and in part held as follows:

"* * * Notwithstanding the views of the courts below that it would be better for the child to remain with his mother rather than be placed in the home of his paternal grandparents in the custody of his father, and even if such were our view, the Indiana court has decreed otherwise in what we must assume was competent litigation. The facts here shown do not make the exceptional case which is prerequisite to an exercise of jurisdiction by the courts of Texas to the extent of a new and independent determination of child custody rights."

In *Short*, where a decree of a New Mexico court awarding custody to the father was involved, our Supreme Court also reversed judgments of the lower courts which had ordered change of custody from the father to the mother and held in part as follows:

"A showing of only slight change of conditions is not sufficient grounds to change custody of children. Frequent custody hearings are discouraged and not encouraged. It is our opinion that the trial court abused its discretion in taking custody of the children from their father and awarding it to their mother. Leonard v. Leonard, 218 S.W.2d 296 (Tex.Civ.App., no writ hist.)"

In my view, the holdings in *Bukovich* and *Short* are applicable here, and prevent affirmance of the judgment.

Consideration of the evidence which appellee relies upon to support the jury's answer to special issue No. 1 reflects that there is not a single fact that did not exist prior to the North Dakota decree of September 18, 1967, or the order overruling appellee's motions to modify that decree on October 28, 1967, or which does not fall within the three categories condemned by our Courts as being insufficient to support a change of custody, as follows: (1) The non-custodian parent's remarriage and ac-

quisition of a home are alone not sufficient to support a change of custody. See Smith v. Clements, 424 S.W.2d 326 (Tex.Civ.App., Amarillo, 1968, wr. ref. n. r. e.); Heiskell v. Heiskell, 412 S.W.2d 774 (Tex.Civ.App., Amarillo, 1967, n. w. h.); Fontaine v. Fontaine, 325 S.W.2d 428 (Tex.Civ.App., Dallas, 1959, n. w. h.). (2) Changes showing adaptation of the child to its present environment or that the custodian has been separated from the child are insufficient to support a change of custody. See Buhrman v. Buhrman, 407 S.W.2d 353 (Tex.Civ. App., Fort Worth, 1966, n. w. h.); Autry v. Autry, 359 S.W.2d 272 (Tex.Civ.App., El Paso, 1962, n. w. h.). (3) Changes relating only to the prospective improvement of the non-custodian parent are insufficient to support a change of custody. See Bukovich v. Bukovich, supra; Buhrman v. Buhrman, supra; Fontaine v. Fontaine, supra.

The majority opinion relies in part on the premise that there was a showing of a family relationship which did not exist at the time of the North Dakota decree. The evidence establishes that appellee had temporary custody of Malinda during the pendency of the North Dakota suit along with custody of the two boys; that shortly after the trial in North Dakota, appellee and the three children came to Texas where they lived together, ultimately moving into the same house with Billy D. Chandler before the North Dakota decree of September 18, 1967 was entered and before appellee was married to Chandler on November 2, 1967. There is no showing of a change in the family relationship between appellee, Malinda and the two boys. Appellee relied at the trial upon the fact that Billy D. Chandler was added to such family relationship, under the circumstances above-mentioned, after she came to Texas. Chandler is not related to either Malinda or the two boys who are in the custody of appellee, and does not have any legal obligation to them. Chandler does not have any legal right to exercise parental authority over Malinda or to treat her as his child. The record shows that Chandler was dismissed as a party to

this suit by the trial court on December 4, 1967. The evidence reflects that appellee and Chandler for some period of time were business associates in North Dakota in connection with the ownership and training of horses. The change involved in such respect is only one of locality.

Ultimately, it appears that the evidence relied on by appellee concerning change of conditions is her marriage to Chandler and that she now has a home for Malinda, which she had prior to the North Dakota decree. Other evidence involving background information, financial and other circumstances of the parties and their families is not sufficient to establish the required material changes which affect the welfare of the minor child since rendition of the North Dakota decree.

Some of the expressions in Autry v. Autry, 359 S.W.2d 272 (Tex.Civ.App., El Paso, 1962, n. w. h.) appear to be particularly applicable in this case. There the court held in part as follows:

"Mere change of circumstances normally incident to the passage of time occasioned, as it has been here, by undue delay not caused by any fault of relator, but due solely to the tedious and sometimes cumbersome processes of our own state justice is not, in our opinion, sufficient change of circumstances to warrant a denial by the trial court of the right of the last lawful custodian to immediate possession of the child or children; nor do we believe such normal change of circumstances as are apt to occur by reason of the adaptation of the child or children to a particular environment, personal attachments, et cetera, would be sufficient to warrant the trial court in ordering a trial de novo on the issue of custody.

"At this writing, more than two years have elapsed since Judge Dawson entered his order of February 13, 1960 dismissing the application of the father for custody of the children, thereby declining to take jurisdiction of the custody matter

and affirming, not only the right of the Maryland court to determine the question, but also the right of the mother of such children (relator) to have the Maryland court pass upon such question. It is inevitable that some changes must have taken place in the lives of the children during these two long years. They have undoubtedly become accustomed to their present surroundings and environment; no doubt they have made many new friends at play and at school and, in all probability, they are healthy, happy and contented with their present circumstances. By the same token there is no reason to believe the children would now be any less happy, healthy and contented if the situation had been reversed, with the children in the care and custody of their mother for the past two years instead of with their father." 359 S.W.2d 272 at 277.

\* \* \* \* \* \*

"All too often, particularly in child custody cases, policies and attitudes adopted by our courts have resulted in decisions holding, in effect, that the only proper place to rear a child is within the boundaries of the particular state in which that court has jurisdiction. Even though the court finds that there is a prior, valid, subsisting judgment of another state awarding such custody, it may, in such cases, limit its consideration of the merits to conditions which have changed since that foreign judgment was rendered; but again, all too often, courts tend to find 'changed conditions' (regardless of how inconsequential they may be) to exist in favor of a local citizen. Such practices result in neither equity nor justice, and not only encourage unlawful acts on the part of parents, but tend to create strife and foster ill-will between courts of different states, and totally ignore principles of comity, which, we believe, have their best application in cases such as this." 359 S.W.2d 272 at 278.

In my view the record herein does not establish the exceptional case required by

Texas law for a new and independent determination of child custody rights, and does not authorize the change of custody from appellant to, appellee as ordered by the trial court. The North Dakota decree awarding custody of the minor child to appellant was and is entitled to full faith and credit by Texas courts.

For the reasons stated, I would reverse the judgment of the lower court and here render judgment that appellant have custody of his daughter, Malinda Dohrmann, in accordance with the North Dakota decree of September 18, 1967 as made final by the order of October 28, 1967.